1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

7

8       Isidro Pacheco,                            CV-15-2264-PHX-DGC (JFM)
        Petitioner
9       -vs-                                       **Report & Recommendation**
        Charles L. Ryan, et al.,                   **on Petition for Writ of Habeas Corpus**
        Respondents.
10

11                        **I.  MATTER UNDER CONSIDERATION**

12          Petitioner, presently incarcerated in the Arizona State Prison Complex at

13   Kingman, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §

14   2254 on November 9, 2015 (Doc. 1).   On February 26, 2016 Respondents filed their

15   Response (Doc. 12).   Petitioner did not file a reply, and the time to do so expired.  The

16   Court then ordered supplemental briefing, and on July 13, 2016, Respondents filed their

17   Supplemental Answer (Doc. 16).  Petitioner filed his Supplemental Reply on August 16,

18   2016.

19          The Petitioner's Petition is now ripe for consideration.   Accordingly, the

20   undersigned makes the following proposed findings of fact, report, and recommendation

21   pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules

22   of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil

23   Procedure.

24

25          **II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND**
     **A.**      **FACTUAL BACKGROUND**
26

27          As reported in the Presentence Investigation, Petitioner was living with his

28   employer and family in the summer of 2012.  The employer's stepdaughter (who was 6

at the time) had been watching television in the living room and was sleeping on the couch.  She awoke to find Petitioner fondling and digitally penetrating her vagina while he sat on the floor. This occurred on two occasions. The victim related the incidents to a seven year old cousin, her brother overheard, and one year later related it to the parents, who contacted police.  Petitioner was located living with the employer's parents, and agreed to meet with investigating detectives there.  When they arrived, he did not have access to the house, and agreed to be interviewed at the Sheriff's Department.  After initialing denying any misconduct, Petitioner admitted fondling the victim on one occasion on the living room couch while they watched movies.  (Exhibit B, Presentence Report at 1-2.)  (Exhibits to the Answer, Doc. 12, are referenced herein as "Exhibit ___.")

## B.    PROCEEDINGS AT TRIAL

On August 28, 2013, Petitioner was indicted in Pinal County Superior Court on counts of child molestation and sexual conduct with a minor, relating to the first incident, and similar charges relating to the second incident.  (Exhibit A, Indictment.) The state disclosed police reports and CDs of the interviews with Petitioner, the victim, and other witnesses.  (Exhibit C, Supplemental Disclosure.)  Petitioner was appointed counsel from the Pinal County Public Defender's Office.

Eventually, Petitioner entered into a written plea agreement wherein he agreed to plead to amended charges of child molestation, and two counts of attempted sexual conduct with a minor.  The agreement provided for a stipulated sentence of no more than the presumptive 17 years on the child molestation charge, and lifetime probation on the remaining counts.  (Exhibit D, R.T. 7/1/14 at 6-7.)[1]

Petitioner appeared on July 1, 2014 with counsel Paula Cook, and entered guilty pleas to the amended charges.  (*Id.* at 11-12.)   Counsel provided a factual basis for the

---

[1] No copy of the plea agreement has been provided.

child molestation charge, and the court asked Petitioner if he had committed the acts described.  Petitioner initially responded "No, sir. That's wrong."  (*Id.* at 13-14.)  After a recess to confer with counsel, Petitioner again pled guilty, counsel again provided the factual basis, and Petitioner agreed that he committed the described act.  (*Id.* at 14-16.)  Petitioner then proceeded to plead guilty to the charges of attempted sexual conduct, counsel described the factual basis, and Petitioner admitted committing the described acts.  (*Id.* at 16-19.) The trial court found the pleas knowing and voluntary, and accepted the pleas. (*Id.* at 19-20.)

A presentence report (Exhibit B) was prepared, recommending the agreed upon sentences.  Petitioner appeared for sentencing on August 5, 2014 with counsel David Wilkinson, because counsel Cook had an emergency.  Petitioner requested a continuance so counsel Cook could appear.  The state and victim's mother objected.  The court denied the continuance.  (Exhibit E, R.T. 8/5/14 at 1-6.)  Counsel argued for the minimum of 10 years, asserting support from family in Mexico but arguing their inability to appear, Petitioner's steady employment, contrition, and admission.  (*Id.* at 7.)  The victim's mother asked for the maximum.  The prosecution requested the agreed upon 17 years.  (*Id.* at 7-10.)  When called upon, Petitioner responded:

> **THE DEFENDANT:**  That I was forced to sign that plea and if I didn't do it, I would be forced to go to trial.  That's what I was told.
> **THE COURT:** Is there anything else you would like to say, sir?
> **THE DEFENDANT:**  No.

(*Id.* at 12-13.)  Petitioner was sentenced to 17 years, the maximum allowed under the plea agreement.  (*Id.* at 13-14.)  The court noted that the presentence investigation erroneously reported the 17 year sentence as only requiring service of 85%, but that the court had advised Petitioner that it was a flat time sentence. (*Id.* at 14.)

## C.    PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz. Rev. Stat. § 13-4033(B); Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## D.   PROCEEDINGS ON POST-CONVICTION RELIEF

On October 20, 2014 (76 days after sentencing), Petitioner filed a Notice of Post-Conviction Relief (Exhibit F).  Counsel was appointed, who eventually filed a Notice of No Colorable Claim (Exhibit G) evidencing an inability to find an issue for review, and requesting leave for Petitioner to file a pro se petition.  The sole request in the notice was that Petitioner be allowed to file a *pro se* petition for post conviction relief.

On February 27, 2015, Petitioner filed his *pro per* Petition for Post-Conviction Relief (Exhibit H).  Petitioner argued that his plea was involuntary because trial counsel was ineffective under *Strickland* by failing to do a pre-trial investigation or otherwise prepare a defense.  (*Id.* at 10-11.)  Petitioner argued that trial counsel failed to investigate: (1) bias of the victim's family based on financial disputes; (2) Petitioner being in Mexico between June and August of 2012. (*Id.* at 11.)  Petitioner also argued that counsel failed to challenge the admissibility of Petitioner's confession.  (*Id.* at 12-14.)  And, Petitioner argued that counsel failed to present mitigation evidence at sentencing.  (*Id.* at 15-19.)  Finally, Petitioner argued that the trial court committed sentencing error.  (*Id.* at 19-24.)  The trial court summarily denied the petition, referencing the State's response, and finding:

> THE COURT HEREBY FINDS that all matters contained in the Petition for Post Conviction Relief are precluded as having been previously ruled upon or untimely filed or the Petition lacks sufficient basis in law and fact to warrant further proceedings herein and no useful purpose would be served by further proceedings…

(Exhibit I, Order 5/22/15.)

Petitioner then filed a Petition for Review (Exhibit J) arguing that the trial court erred by issuing a "format letter" denial, by finding he had failed to assert colorable claims, and (because his of-right PCR proceeding was the equivalent of a direct appeal)

4

by failing to review the record for "fundamental error" under *Anders v. California*, 386 U.S. 738 (1967), after counsel failed to raise any claims. (*Id.* at 8-11.)

On October 13, 2015, the Arizona Court of Appeals issued its Memorandum Decision (Exhibit K).  (*See* Exhibit L, Mandate.)  The courted granted review but denied relief.  The court rejected the arguments regarding the findings of no colorable claims (Exhibit K at ¶ 3), review for error (*id.* at ¶ 4), and the references to preclusion and untimeliness in the trial court's denial (*id.* at ¶ 5).   The court further considered Petitioner's factual assertions that "he was forced to plead guilty because of counsel's deficient performance."  (*Id.* at ¶ 6.)  The court rejected those contentions, concluding:

> Pacheco fails to explain what additional pretrial investigation counsel should have undertaken or how he was prejudiced by that deficient performance. Nor does he provide support for his belief that a motion to suppress his confession would have been successful or explain why counsel was deficient for failing to file such a motion. And, although he argues trial counsel was " 'more familiar' "with his case than the attorney who represented him at sentencing, he does not identify or describe the mitigating evidence she would have offered had the trial court continued the sentencing hearing rather than proceeding with substitute counsel, nor does he explain what the "dozens of letters [he would have had] sent from Mexico asking the court to give [him] a mitigated sentence" would have said. Additionally, although the plea agreement stated the sentence for child molestation would be between ten and seventeen years, and Pacheco told the court at the change-of-plea hearing that no one had promised him anything in exchange for pleading guilty, he nonetheless argues trial counsel "assured him that he had a good chance of receiving a ten year sentence." To the extent Pacheco asserts "[t]he only reason [he] signed the plea was because [his attorney] told [him] that [he] had a 'good chance' of getting the 10 year sentence," the transcript from the change-of-plea hearing simply does not support his argument.

(*Id.* at ¶ 7.)  The court also concluded that it was not required on review of the PCR proceeding, to conduct a review of the record for "fundamental error."  (*Id.* at ¶ 4.)

Petitioner did not seek further review, and on November 30, 2015, the Arizona Court of Appeals issued its Mandate (Exhibit L).

## E.     PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 9, 2015 (Doc. 1). Petitioner's Petition asserts the following four grounds for relief:

1. Trial counsel was ineffective for failing to investigate and mount a defense.

2. Trial counsel was ineffective for failing to challenge the admissibility of Petitioner's confession based upon his will having been overborne by police conduct, *i.e.* that he was told he could leave if he confessed.

3. Trial counsel was ineffective for failing to investigate and present mitigation evidence at sentencing.

4. Petitioner was entitled under *Anders* to a review of the record for "fundamental error" by the trial court because his PCR proceeding was the equivalent of direct appeal.

**Response** - On February 26, 2016, Respondents filed their Response ("Answer") (Doc. 12). Respondents argue the Ground 4 is not a cognizable claim, Grounds 1 and 2 were waived by Petitioner's guilty plea, and Ground 3 is without merit.

**Reply** – The Court's service Order filed November 30, 2015 provided: "Petitioner may file a reply within 30 days from the date of service of the answer." (Doc. 5 at 3.) That time has passed, and Petitioner has not filed a reply.

**Supplements** – On June 13, 2016, the Court observed that Respondents had not addressed Petitioner's claim in Ground 4 that the court had failed to conduct a review of the record pursuant to *Anders*. Respondents were directed to supplement their brief to address the claims, and Petitioner was granted leave to reply to the supplemental answer. (Order 6/13/16, Doc. 14.)

On July 13, 2016, Respondents filed their Supplemental Answer (Doc. 16), arguing that: (1) no *Anders* claim had been raised in the Petition, and it was thus waived; (2) no *Anders* claim had been raised in the trial court, and thus such a claim had been waived, and is procedurally defaulted; and (3) *Anders* procedures do not apply to an Arizona of-right PCR proceeding. Respondents concede that an *Anders* violation is

structural error requiring reversal without a showing of prejudice, and would require a grant of relief subject to a new Rule 32 proceeding consistent with *Anders*.

On August 16, 2016, Petitioner filed his "Reply to Supplemental Answer" (herein "Supplemental Reply") (Doc. 18) arguing that: (1) Arizona Rule of Criminal Procedure Rule 32.6 requires *Anders* review; (2) no such review was conducted; and (3) Petitioner was prejudiced because he was sentenced to an enhanced sentence without the necessary showing or admissions, and without a jury determination on the enhancement.

The Court's Order to supplement provided: "Because the time for a reply to the original Answer (Doc 12) has expired, Petitioner will be limited to addressing the arguments in the supplemental answer."   (Order 6/13/16, Doc. 14 at 2.)   Accordingly, to the extent that Petitioner addresses the merits of Ground 1, 2 and 3 in his Supplemental Reply, those arguments are disregarded as untimely.

### III.  APPLICATION OF LAW TO FACTS
### A.  GROUND 1 – INEFECTIVENESS RE INVESTIGATION
### 1.  Parties Arguments

In Ground 1, Petitioner argues that trial counsel was ineffective for failing to investigate and mount a defense based upon: (a) the victim's bias based on financial disputes between Petitioner and the victim's father; (b) the victim's delay in reporting, doing so only because she was upset about Petitioner moving in with other family; (c) Petitioner was in Mexico on the relevant dates; and (d) failure to interview the victim, her father, or Petitioner's alibi witnesses.  (Petition, Doc. 1 at 6, *et seq.*)

Respondents argue that this claim was waived by Petitioner's guilty plea, citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Respondents acknowledge, however that Petitioner has not waived arguments that a failure to investigate rendered counsel's advice on the guilty plea deficient.  (Answer, Doc. 12 at 9-10.)  Respondents then argue the merits of the claim, asserting that Petitioner has failed to allege that further investigation would have altered counsel's advice, only that it would have altered

Petitioner's decision.  Respondents further argue that any claim that further investigation would have improved Petitioner's plea bargaining position was waived by the plea. Respondents argue that Petitioner's allegations show that counsel's advice was focused on the potential sentence at trial, not the chances of success.  Respondents further argue that Petitioner's allegations show that counsel was aware of the purported defenses.

**2.  Waiver by Guilty Plea**

Respondents argue that Ground 1 was waived by Petitioner's guilty plea.

Some constitutional rights are automatically waived by entering an unconditional guilty plea. Such rights include, among others, the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), as well as the right to challenge constitutional defects which occur before entry of the plea. *United States v. Broce*, 488 U.S. 563, 573-74 (1989).  A guilty plea breaks the chain of events that proceeded it in the criminal process. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Once a defendant enters a valid guilty plea, he can no longer raise a claim of violation of constitutional rights that arose prior to the plea.  *Id*. at 267; *United States v. Benson*, 579 F.2d 508, 510 (9th Cir. 1978).

However, "[w]here, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "As we explained in [*Tollett*], a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel  was not within the standards set forth in *McMann*.'"  *Id.   But see United States v. Garcia-Valenzuela,* 232 F.3d 1003, 1005 (9th Cir. 2000) (detailing other exceptions to the waiver implicit in a guilty plea, including claims of vindictive prosecution, double

jeopardy, defective indictment, vague statute, selective prosecution, judicial disqualification).

To the extent that Petitioner's Ground 1 is intended to assert failings of trial counsel which did not impact his advice to Petitioner on his guilty plea, those claims were waived by Petitioner guilty plea.  So, to the extent that Petitioner simply claims that trial counsel failed to mount various defenses, his claim is waived.

On the other hand, to the extent that Petitioner asserts claims in Ground 1 that trial counsel failed to investigate various defenses, and thus his advice to Petitioner to plead guilty was defective and rendered Petitioner's guilty plea unknowing and thus involuntary, it is not waived by Petitioner's guilty plea, and must be addressed on the merits.

### 3.  Standard for Habeas Claims

**Standard Applicable on Habeas** - While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the

state court was not merely wrong, but actually unreasonable."   *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.   This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.   *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."   Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply.  *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013).  *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

**4.  Standard for Ineffective Assistance**

**Applicable Standard on Ineffective Assistance Claims** –   Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, Petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 687-88.  Although the petitioner must prove both elements, a court may reject his

claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy. *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90). The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

In the context of a pleading defendant, prejudice is ordinarily shown by evidence that had Petitioner been properly advised by trial counsel, he would have rejected the plea agreement and proceeded to trial. *Hill*, 474 U.S. at 58-59; *Strickland*, 466 U.S. at 694. The Court must assess the circumstances surrounding the case to determine if the petitioner's allegation that he would have proceeded to trial is plausible. *See United States v. Keller*, 902 F.2d 1391, 1394-95 (9th Cir. 1990)(petitioner failed to show prejudice because he entered plea as alternative to long trial, possible conviction on more serious charges and a longer sentence; additional information about parole eligibility was unlikely to affect his decision).

In the particular context of attacks on the voluntariness of a guilty plea, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory

evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### 5.  Application to Facts

Petitioner references four separate failures of trial counsel in investigating and advising him: (a) the bias of the victim and her family based on financial disputes between Petitioner and the victim's father; (b) the victim's delay in reporting, doing so only because she was upset about Petitioner moving in with another family; (c) Petitioner was in Mexico on the relevant dates; and (d) failure to interview the victim, her father, or Petitioner's alibi witnesses.

In presenting his claim to the Arizona Court of Appeals, Petitioner argued: (a) the victim's bias (Exhibit J, PFR at 5); (b) the delay in reporting (*id.*); and (c) Petitioner's absence to Mexico (*id.*).  He did not argue that counsel failed to interview the witnesses, but only argued generically that counsel "refused to do pretrial preparation or investigate." (*Id.*).

The Arizona Court of Appeals observed:

> Although not technically presented as "arguments" on review, Pacheco nonetheless seems to "argue," as he did below, that he was forced to plead guilty because of counsel's deficient performance, asserting his attorneys failed to conduct pretrial investigation or "mount a defense" for his case or to challenge the voluntariness of his confession to police, and that counsel failed to present mitigating evidence at sentencing. As such, we briefly address these claims.

(Exhibit K, Mem. Dec. at ¶ 6.)   The Court disposed of the investigation claims by concluding: "Pacheco fails to explain what additional pretrial investigation counsel should have undertaken or how he was prejudiced by that deficient performance." (*Id.* at ¶ 7.)

Petitioner must show that this conclusion was contrary to or an unreasonable

application of federal law, or based upon an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Petitioner makes no explicit arguments to show either.

Indeed, Petitioner continues to fail to show what additional investigation should have been conducted or what would have resulted, or why it would have altered counsel's advice to Petitioner.

### a.   Victim's Bias

With regard to the victim's bias, Petitioner does not suggest that he was unaware of the relevant facts at the time he entered his guilty plea, e.g. the financial disputes with the father, etc.  Nor does he suggest what investigation should have been conducted.  At best, he complains that counsel did not interview the victim, or her parents.

Under Arizona law, counsel had no right to interview the victim prior to trial.  *See* Ariz. Const. Art. 2, § 2.1(5).  Petitioner proffers no reason why, given the age of the victim, and the strong feelings of the victim's mother against Petitioner, to expect that efforts by counsel to interview the victim would have been successful.

Further, Petitioner proffers nothing to suggest that counsel was unaware of the facts Petitioner suggests would have resulted from such interviews.  "A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel."  *United States v. Decoster*, 624 F.2d 196, 209 (D.C.Cir.1976) (*en banc*), as quoted in *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986).

Finally, a petitioner may not simply speculate about what a witness' testimony, but must adduce evidence to show what it would have been.  *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991).  Petitioner proffers nothing to show that these

witnesses would have actually supported his assertions of bias.

### b.   Delay in Reporting

Similarly, Petitioner fails to support his claim about the victim's belated reporting resulting from Petitioner moving in with another family.  He fails to identify the evidence to be developed, how it would have been developed, or to show affidavits or testimony from any purported witnesses.  Moreover, the delay and Petitioner's residence were apparent from the indictment and police reports.

Further, it is unclear how explaining the victim's delay would have benefitted Petitioner at trial.

### c.   Absence to Mexico

Petitioner fails to support his claim concerning his absence to Mexico by showing what evidence counsel could have discovered with more investigation.  Rather, he leaves this Court to speculate, just as he did the state court.  Cursory allegations that are purely speculative cannot support a claim of ineffective assistance of counsel.  *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.), *cert. denied*, 493 U.S. 869 (1989).   Thus, a defendant cannot satisfy the Strickland standard by "vague and conclusory allegations that some unspecified and speculative testimony might have established his defense." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).

### d.   Failure to Interview Witnesses.

Finally, Petitioner argues that counsel failed to interview the victim, her father, or Petitioner's alibi witnesses.  Petitioner suggests no alibi witnesses, but again leaves this Court to speculate, just as he did the state court.  Petitioner again fails to show that an interview of victims would have been possible, or that favorable testimony would have resulted.

**6.  Summary re Ground 1**

Petitioner's Ground 1 was waived by his guilty plea to the extent that it does not assert a failure to investigate resulted in deficient advice on the plea.  Petitioner fails to support his claims of failure to investigate with anything more than conclusory allegations that additional investigation should have been undertaken in various areas.  Accordingly, the undersigned can find no merits to the claims, and cannot find that the state court's decision was legally or factually flawed.  Accordingly, Ground 1 must be denied.

**B.  GROUND 2 – INEFFECTIVENESS RE CONFESSION**

**1.  Parties Arguments**

In Ground 2, Petitioner argues that trial counsel was ineffective for failing to challenge the admissibility of Petitioner's confession based upon his will having been overborne by police conduct, *i.e.* that he was told he could leave if he confessed.  Petitioner argues that counsel failed to investigate such a motion by watching the videos of the confession.  (Petition, Doc. 1 at 7, *et seq.*)

Respondents argue that a claim based on failure to file a motion to suppress is waived by a guilty plea.  Respondents further argue "Petitioner does not claim counsel's failure to file a motion to suppress affected her advice to plea guilty." (Answer, Doc. 12 at 13.)

**2.  Waiver by Plea**

Petitioner's claim is simply that trial counsel failed to investigate and pursue a defense.  He makes no claim that such failures impacted counsel's advice on the plea, or rendered Petitioner's plea involuntary.

Accordingly, this claim was waived by Petitioner's guilty plea, and must be denied.

//

//

15

## C.  GROUND 3 – INEFFECTIVENESS RE MITIGATION

In his Ground 3, Petitioner argues that trial counsel was ineffective for failing to investigate and present mitigation evidence at sentencing.   Petitioner complains that substitute counsel appeared, a continuance was denied, and no mitigation was presented. He argues that available mitigation evidence included: (1) his completion of alcohol treatment after receiving a DUI as a sign he could be rehabilitated; (2) the financial stress suffered by Petitioner at the time and resulting depression; (3) the allegations were limited to touching and did not include penetration, making 10 years an appropriate sentence; and (4) no effort was made to secure the presence of or letters from family and friends from Mexico.  Additionally, he argues that counsel misrepresented his chances of obtaining a mitigated sentence. (Petition, Doc. 1 at 8, *et seq.*)

Respondents argue that Ground 3 is without merit.   The undersigned finds Respondents' arguments persuasive.

### 1.  Substitute Counsel

Respondents argue that the Arizona Court of Appeals reasonably rejected his claims regarding substitute counsel, given counsel's right to enlist associates, and that the substitute counsel demonstrated knowledge about Petitioner's case.  (Answer, Doc. 12 at 15, *et seq.*)   Indeed, Petitioner fails to point to any particular matters about which primary counsel had better knowledge which would have been relevant at sentencing. And, substitute counsel did argue, albeit tersely, for mitigation on the basis of Petitioner's employment record, support in Mexico, the flat time nature of the sentence, and Petitioner's remorse and confession.  (Exhibit E, R.T. 8/5/14 at 7.)

### 2.  Representations of Counsel re Mitigation

Respondents argue the state court reasonably rejected any claim concerning representations about obtaining a minimum sentence, because only a gross mischaracterization of the likely outcome is cognizable, and counsel in any event only correctly represented that Petitioner was entitled to argue for the minimum.  (Answer,

Doc. 12 at 17, *et seq.*)

Indeed, in *U.S. vs. Michlin*, 34 F.3d 896 (9th Cir. 1994) the Ninth Circuit recognized that the court has "held that 'an erroneous prediction by defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea,' although an exception might be made in a case of 'gross mischaracterization of the likely outcome.'" *Michlin*, 34 F.3d at 899 (citations omitted).   In *Iaea vs. Sunn*, 800 F.2d 861(9th Cir. 1986) defense counsel represented to the defendant that a guilty plea would give him a chance to receive probation.  That advice was defective because of mandatory minimum sentences which resulted in his receiving life sentences. The court found that such a gross mischaracterization (probation v. life sentences) established defective performance by counsel and remanded the case for a determination on the prejudice component of the ineffective assistance claim. *Id.* at 865-66.   *See also Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990), cert. denied, 499 U.S. 940 (1991)(no ineffectiveness where actual sentence was three years longer than attorney predicted).  In contrast, in *Womack v. Del Papa*, 487 F.3d 998 (9th Cir. 2007), counsel had predicted a sentence upon pleading guilty of 30 to 40 years, and instead the defendant received eight life terms without parole.  The Ninth Circuit distinguished *Iaea*, and found the plea nonetheless voluntary.

Thus, to the extent that Petitioner simply complains about a seven year difference between the sentence counsel led him to hope for, and the sentence he received, that would not constitute a gross mischaracterization.

To the extent that Petitioner complains that the misrepresentation was that mitigation would be presented, for the reasons discussed above and hereinafter, Petitioner fails to show it was not presented.

Respondents further argue that the state court reasonably concluded that Petitioner's assertions about being promised a lesser sentence were untrue, given his representations at the change of plea and at sentencing about why he was agreeing to plead.  (Answer, Doc. 12 at 18.)   At the change of plea, Petitioner denied such

inducements:

> **THE COURT:** Has anybody made any promises to you other than the promise contained in your plea agreement in order to get you to waive your legal rights and plead guilty today?
> **THE DEFENDANT:** No.

(Exhibit D, R.T. 7/1/14 at 6.)  At sentencing, the only objection raised by Petitioner was about being forced to choose between the plea and trial:

> **THE COURT:** All right. Mr. Pacheco, you have the right to be heard before your sentence is imposed. You do not have to say anything, sir, on your behalf if you do not want to, but if you want to be heard, now is the time.
> **THE DEFENDANT:** That I was forced to sign that plea and if I didn't do it, I would be forced to go to trial. That's what I was told.
> **THE COURT:** Is there anything else you would like to say, sir?
> **THE DEFENDANT:** No.

(Exhibit E, R.T. 8/5/14 at 12-13.)

Finally, Respondents argue Petitioner cannot show prejudice because it is unlikely he would have decided to proceed to trial in face of the substantially longer sentence if convicted at trial, and his acknowledgement that he was subject to a potential sentence of 17 years.  (Answer, Doc. 12 at 18, *et seq.*)  The foregoing allocution at sentencing demonstrates Petitioner's reasoning for accepting the plea.  As explained by the court at the change of plea, if Petitioner had proceeded to trial on the amended counts, he faced the potential of consecutive sentences of 24, 15, and 15 years, a total of 54 years in prison.  (Exhibit D, R.T. 7/1/14 at 8-9.)  Given Petitioner's age of 59 at the time (Exhibit B, Presentence Report at 4), that would have been an effective life sentence.  With a ten or seventeen year sentence, Petitioner had some likelihood of being released.  Moreover, Petitioner's own version is that he was, at best, promised an opportunity for a mitigated sentence.   The difference between a possible 10 (with presumptive 17) rather than a possible 54, versus just a presumptive 17 and possible 54 is not so great as to suggest that Petitioner would have proceeded to trial if counsel had advised the latter to be the choice.

18

### 3.  Friends and Family Support

Respondents further argue that counsel was not deficient for failing to pursue appearances from his family, and that counsel's efforts to obtain letters were unsuccessful.  Respondents further argue that Petitioner fails to show that such letters were available by providing them to the state court in his PCR proceeding.  (Answer, Doc. 12 at 19, *et seq.*)  The undersigned finds the latter argument persuasive.  Petitioner leaves this Court to presume that some unidentified family or friends would have been willing to make some unidentified positive comments to the Court.  For example, Petitioner could have presented affidavits from friends or family members, detailing that they would have provided positive responses had they been asked by trial counsel.  Petitioner fails to carry his burden of providing evidence of specific mitigating statements that would have been available had counsel pursued them.

### 4.  Alcohol Treatment

Respondents argue that the failure to address the alcohol treatment could have been a reasonable tactical decision given Petitioner's refusal to discuss his alcoholism with the presentence report writer, the potential of negative inferences from such evidence, and the potential that the court would fail to see a link in rehabilitation between alcohol abuse and molestation of a child. (Answer, Doc. 12 at 20.)   The Presentence Report reflected:

> • Based on the advice of his attorney, he did not answer questions related to illegal drug use/abuse
> • He has a misdemeanor conviction for possession of drug paraphernalia

(Exhibit B at 3.)  The report also reflected: "He has a prior felony conviction for DUI, and two misdemeanor convictions for DUI."  (*Id.* at 4.)  Thus, while raising alcohol treatment might suggest to some extent that Petitioner was capable of rehabilitation, the fact that he had three DUIs could suggest to the sentencing court that Petitioner's rehabilitation would come only after repeated offenses.  Given the seriousness of the instant offenses, any indication that Petitioner was slow at rehabilitation could have been

19

reasonably seen by counsel as detrimental.   Under these circumstances, counsel could have made a reasonable tactical decision that raising the alcohol issue was not beneficial. *See Morris v. California*, 966 F.2d 448, 456-457 (9th Cir. 1991), *cert. denied*, 113 S. Ct. 96 (1992) ("We need not determine the actual explanation for trial counsel's failure to object, so long as his failure to do so falls within the range of reasonable representation.").

### 5.  Depression and Financial Concerns

Respondents argue that the report to the presentence investigator that Petitioner suffered no mental health issues countered the argument that the offense resulted from depression.   (Answer, Doc. 12 at 20.)   The Presentence Report described Petitioner's depression:   "He is experiencing some situational depression because of this case; however, he does not have a history of mental health problem."  (Exhibit B at 3.)  Thus, the only support in the record for Petitioner's depression is post-arrest depression, which would proffer no substantial basis for mitigation.   Few are the defendants facing substantial prison terms who do not suffer such situational depression.   Petitioner now argues that he was suffering depression at the time of the offenses "due to his inability to meet his financial obligations to his family in Mexico."   (Petition, Doc. 1 at 8-8A.) Perhaps evidence of depression that rose to a more significant level might provide some mitigation.   *See e.g. Cooper v. Sec'y, Dept. of Corr.,* 646 F.3d 1328, 1346 (11th Cir. 2011) (mitigation available form "history of depression and suicidal gestures" when coupled with history of physical abuse, mental retardation, and domination by co-defendants).   But Petitioner proffers nothing more than an unadorned claim of situational depression resulting from financial issues.   Trial counsel could have made a reasonable tactical decision that financial woes were a poor justification for molesting a six year old, and would instead suggest that Petitioner would be likely to reoffend if so trite a circumstance was a trigger.

**6.  No Penetration**

Respondents properly argue that counsel could have made a reasonable tactical decision that arguing that the offense was only fondling and not penetration was insensitive to the victim and her family, and unlikely to have positive results with the judge. (Answer, Doc. 12 at 20.)   Moreover, while the particular conduct underlying the count on which Petitioner was sentenced to prison was limited to "touching," (Exhibit D, R.T. 7/1/14 at 16), the factual basis of the other counts included "attempting to digitally penetrate" (*id.* at 17-19).   An Arizona sentencing judge is entitled to consider other conduct (including subsequent conduct) in choosing between authorized sentences.  *See e.g. State v. Schneider*, 148 Ariz. 441, 449, 715 P.2d 297, 305 (App. 1985) (considering "misconduct committed by appellant while the trial was pending").   Thus counsel could have reasonably concluded that attempting to rely on the lack of penetration would not have been beneficial to Petitioner, and could have opened the door to highlighting the other conduct.

**7.  Summary re Ground 3**

Based upon the foregoing, the undersigned concludes that Petitioner has failed to establish that trial counsel was ineffective with regard to mitigation.   Accordingly, Ground 3 must be denied.

**D.  GROUND 4 – RIGHT TO *ANDERS* REVIEW**

**1.  Nature of the Claim**

In initially directing a response to the Petition, the Court summarized Ground 4 as "apparently alleging that the state trial court employed the wrong standard of review during his previous Rule 32 proceeding."  (Order 11/30/15 at 2.)  Upon review, and in light of the record, the undersigned has construed Ground 4 as arguing more particularly that after PCR counsel filed a Notice of No Claim, Petitioner was entitled under *Anders* to a review of the record for "fundamental error" by the trial court because his PCR

proceeding was the equivalent of direct appeal.  (Petition, Doc. 1 at 21, *et seq.*)

Respondents argue that the undersigned has wrongly construed the claim, and that the claim instead simply challenges the format of the trial court's summary ruling, that such a claim is simply an attack on post-conviction relief procedures, and thus is a matter of state law and not cognizable on habeas review.  (Answer, Doc. 12 at 8; Supplemental Answer, Doc. 16 at 2-4.)  Respondents concede that Petitioner cited *Anders* (in his instant Petition, and in the state courts), but argue that he did so only "to support his claim that the trial court erred by not better explaining its reasoning on the record, not that the court and defense counsel should have independently reviewed the record before allowing him to proceed pro se."[2]  (Supp. Ans., Doc. 16 at 3.)  Respondents rely, in part upon the fact that no prior court (including this Court in the service order) have discerned a true *Anders* claim.  (*Id.*)

**Petitioner's Language** – Respondents concede that this Court is mandated to apply a liberal construction to the *pro se* petition.  (Supp. Ans. Doc. 16 at 2 (citing *Nardi v. Stewart*, 354 F.3d 1134, 1140 n.4 (9th Cir. 2004)).)  But this Court need apply very little liberality to find an *Anders* claim within the four corners of the Petition. The Petition states:

> GROUND FOUR:   Are pleading defendants entitled to review for fundamental error by the trial court on a first as-right Rule 32?
> * * *
> On May 23, 2016, the trial court issued its ruling on Petitioner's Rule 32 which was a blanket denial in the form of a "format letter."   Because of this Petitioner argued to the court of appeals that said ruling does not adequately explain or identify the reasons why the Rule 32 petition was denied.

---

[2] To the extent that Petitioner's claim can be understood to simply be an objection to the taciturn opinion of the trial court, it would be without merit.  Petitioner points to no authority requiring a PCR court, or even an appellate court, to explicitly state its reasons for rejecting a claim.  *See* Mathilde Cohen, *When Judges Have Reasons Not to Give Reasons: A Comparative Law Approach*, 72 Wash. & Lee L. Rev. 483, 532 (2015). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("sometimes the members of the court issuing an unexplained order will not themselves have agreed upon its rationale, so that the basis of the decision is not merely undiscoverable but nonexistent"). *Cf. Harrington v. Richter*, 562 U.S. 86, 98 (2011) (finding summary state court decision sufficient for purposes of applying 28 U.S.C. § 2254(d)).

The reason Petitioner believes that he is entitled to review for fundamental [sic] error by the trial court and have each of his pro se issues specifically addressed is because his post-conviction proceeding was equivalent to a direct appeal. State v. Pruett, 188 Ariz. 128 (App. 1996). On direct appeal when appointed counsel cannot find any arguable issues counsel must file an Anders brief. The court must then search the record for fundamental error and specifically address all issues a defendant raises pro se.

Hence, Petitioner submits that pleading defendants are entitled to the same Fourteenth Amendment protection as non-pleading defendants on direct review.

(Petition, Doc. 1 at 9 (emphasis in original).)

To be sure, Petitioner complains about the format of the trial court's denial. But, his plain language also challenges the trial court's failure to search the record for error under *Anders*.

Respondents assert that Petitioner does not argue "that the trial court should have independently searched the record for error." (Supp. Ans. Doc. 16 at 2.) But Petitioner explicitly argues he was "entitled to review for fundamental [sic] error by the trial court" and that the court was required to "search the record for fundamental error and specifically address all issues a defendant raises pro se." (Petition, Doc, 1 at 9.)

Petitioner's references to "fundamental error" may seem incongruous with a call for an application of *Anders*, which placed no limit on the nature of error to be addressed. Rather, *Anders* simply directed that upon counsel filing a brief proposing no basis for appeal that the appellate court then "proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744. But, in Arizona, the appellate courts have regularly couched their *Anders'* searches of the record in terms of a review for "fundamental error."

This liturgy appears to have its roots in *State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985), where the Arizona Supreme Court appears to have combined *Anders* review with a statutory mandate for the Arizona appellate courts to "to search the entire record in a criminal appeal for fundamental error." *State v. Taylor*, 187 Ariz. 567, 571, 931 P.2d 1077, 1081 (App. 1996), corrected (Apr. 10, 1996) (citing Ariz. Rev. Stat. § 13-4035, repealed, 1995 Ariz.Sess.Laws Ch. 198, § 1).) In *Fuller* the Arizona

23

Supreme Court stated:

> Pursuant to A.R.S. § 13–4035, we have searched the entire record for fundamental error, and we have found none. Pursuant to *Anders v. California, supra,* and *State v. Leon, supra,* we have searched the entire record relating to appellant's conviction in CR–123302 for fundamental error, and we have found none.

*Fuller*, 143 Ariz. at 575, 694 P.2d at 1189.   In *State v. Mann*, 188 Ariz. 220, 934 P.2d 784 (1997), the Arizona Supreme Court observed the repeal of the mandate for fundamental error review under § 13-4035 and explained:

> The practice arose in the days of the territorial government, when most defendants did not have a lawyer, nor were lawyers required or always appointed by the courts. *See* Ariz.Pen.Code 1901, § 1059; *see also* Ariz.Pen.Code 1901, §§ 1024 and 1025. Thus, appeals and such post-conviction relief as was available were options out of reach for most defendants. When a case was appealed, therefore, fundamental error review served a vital role in protecting the defendant's constitutional rights. Today, almost all of our counties have a public defender. In addition, we now have a panoply of mandatory protections-appointment of counsel for trial and appeal, readily available appeals, *Anders* briefs, post-conviction relief procedures, and direct appeals and post-conviction review in death penalty cases.

Mann, 188 Ariz. at 231, 934 P.2d at 795.

Of course, even after the repeal of § 13-4035, "fundamental error" remains in some contexts an appropriate standard of review in Arizona for some claims.   In his concurrence in *Mann*, Justice Martone concurred in the decision to stop "*sua sponte* fundamental error review," but explained the continued vitality of the fundamental error standard in other areas:

> I use the term *sua sponte* fundamental error review to distinguish it from two separate but related doctrines. *Sua sponte* fundamental error review was imposed solely by A.R.S. § 13-4035 and required us to read every item in the record with an eye towards looking for fundamental error. The statute having been repealed, we no longer do this. This is not to be confused with two other doctrines unaffected by the repeal of the statute. First, in criminal cases, we continue to review claims of error actually made on appeal but which were unpreserved at the trial level by a fundamental error standard. Second, if in the process of examining issues presented by way of appeal we stumble across fundamental error, then we have the discretion to address it.

*Mann*, 188 Ariz. at 232 n. 1, 934 P.2d at 796 n. 1 (Martone, J., concurring).   *See also*

24

1  *Taylor*, 187 Ariz. at 571, 931 P.2d at 1081 (after defendant's counsel filed a non-*Anders*

2  brief raising claims on appeal, applying fundamental error review to an additional basis

3  for relief which was not raised by the parties).

4      Nonetheless, despite the repeal of § 13-4035, the liturgy established in *Fuller*

5  remains in use, applying the terminology of "fundamental error" to review under *Anders*.

6  For example in a 2013 unpublished decision, the Arizona Court of Appeals reported:

7
        Pursuant to our obligation under *Anders*, we have searched the
        record for **fundamental, reversible error** and found none save the
8         sentencing error discussed above. *See State v. Fuller*, 143 Ariz. 571,
        575, 694 P.2d 1185, 1189 (1985) (interpreting *Anders* to require
9         appellate court to search record for **fundamental error**).

10  *State v. Holness*, 2013 WL 144270, at *2 (Ariz. App. Div. 2, Jan. 14, 2013).  *See also*

11  *State v. Varelas,* 2013 WL 3771571, at *1 (Ariz. App. Div. 2, July 16, 2013), *State v.*

12  *Ridener*, 2016 WL 4193960, at *1 (Ariz. App. Div. 1, Aug. 9, 2016) (Swann, P.J.,

13  Winthrop, J., Kessler, J.) ("This is an appeal under *Anders v. California*…We have

14  reviewed the record for fundamental error.").

15      In contrast, the Arizona Court of Appeals appears to have sometimes recognized

16  the distinction and occasionally altered the practice.

17
        Chandler's counsel has filed a brief in accordance with *Smith v.*
        *Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738
18         (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969),
        stating he has searched the record on appeal and found no arguable
19         question of law. His counsel therefore requests we review the record
        for **fundamental error**. *See State v. Clark*, 196 Ariz. 530, 537, ¶
20         30, 2 P.3d 89, 96 (App. 1999) (stating this court reviews the entire
        record for **reversible error**).
21                 * * *
        We have reviewed the entire record for **reversible error** and find
22         none.

23  *State v. Chandler*, 2016 WL 4435592, at *1 (Ariz. App. Div. 1, Aug. 23, 2016) (Swann,

24  P.J., Winthrop, J., Kessler, J.) (emphasis added). *See also In Re Cheyenne H.*, 2015 WL

25  9306550, at *1 (Ariz. App. Div. 1, Dec. 22, 2015) ("counsel filed a brief in accordance

26  with *Anders* …asking this court to search the record for **fundamental error**. We have

27  reviewed the entire record for **reversible error** and find none.") (emphasis added).

28      Thus it is not surprising, and not misleading, that Petitioner would utilize the term

"fundamental error" in seeking review under *Anders*.

**Failure to Challenge Counsel's Brief** - Respondents argue that Petitioner did not argue that counsel should have filed an *Anders* brief.  (Supp. Ans., Doc. 16 at 2.) Presumably Respondents refer to the procedure established in *Anders* that in addition to permitting a *pro se* brief, counsel's argument-less brief "be accompanied by a brief referring to anything in the record that might arguably support the appeal" and to request review by the court. *Anders*, 386 U.S. at 744.  However, the fact that Petitioner did not attack one deviation from *Anders* (counsel's failings) does not mean he did not mount another (the court's failings).

Moreover, the essence of the *Anders* requirement is the enforcement of the constitutional right to counsel in a first of-right appeal.  Rather than simply allowing appointed counsel to functionally abandon the representation (as counsel did in this case), it requires counsel to provide a summary of the pertinent parts of the case and addressing any non-frivolous claims, and then requires the court to undertake an independent review of the record.  *See Penson v. Ohio*, 488 U.S. 75, 81–82 (1988). Where counsel fails to meet his obligations under *Anders*, the appellate court commits independent error in permitting counsel to abandon the representation without filing a merits brief, even if the court were to proceed to conduct a review of the record.

> The Ohio Court of Appeals erred in two respects in granting counsel's motion for leave to withdraw. First, the motion should have been denied because counsel's "Certification of Meritless Appeal" failed to draw attention to "anything in the record that might arguably support the appeal."…Moreover, the Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound."

*Penson*, 488 U.S. at 81–83.

**Prior Constructions** - The undersigned also concludes that the construction made herein is not precluded by prior findings of this Court or the state courts.

Ordinarily the presiding district judge's description of claims when directing a habeas response is treated by the undersigned magistrate judge as a binding finding.

Here, however, the Court's characterization of the claim in its service order was equivocal, concluding only that the ground "apparently alleg[ed]…the wrong standard of review." (Order 11/30/15 at 2.)

Moreover, while more specific than a simple allegation of a "wrong standard of review," the finding of an *Anders* claim is not inconsistent with the Court's service order. *Anders* is a standard of review, to the extent that it calls for an appellate court facing an appointed counsel's failure to find an issue for review to conduct an independent review of the record for potential claims for relief. While not a standard for resolving an individual substantive claim, *Anders* does set a procedural standard for review of an appeal in the unique circumstances that it addresses. Thus, this Court's general description of the claim in the service Order does not preclude the specific construction finding an *Anders* claim.

Further, whatever persuasive power there might be to the state courts' characterizations of Petitioner's claims, the Arizona Court of Appeals recognized and addressed Petitioner's call for an independent review for error by a court.

Petitioner's Petition for Review posited three bases for review. The first was the trial court's issuance of a "blanket denial in the form of a 'format letter.'" (Exhibit J, PFR at 8-9.) The second was "to determine if a new definition of a colorable claim has been created." (*Id.* at 10.) The third was based on *Anders*.

> The third and final reason this court should accept review is because this case involves a pleading defendant on collateral review and he should be given the same constitutional protections as a non-pleading defendant on direct review.
>
> When appointed counsel cannot find any meritorious issues to raise on direct appeal counsel must file an *Anders* brief and ask the court to search the record for fundamental error. The court must then search the record for fundamental error and specifically address any issues that the defendant raises in pro se. Defendant contends that he is entitled to the same protections as a non-pleading defendant because his post-conviction proceedings are equivalent to a direct appeal. State v. Pruett, 185 Ariz. 128 (Ariz. App. 1996).
>
> Instead the trial court issued an order in the form of a format letter and never specifically addressed any of Defendant's claims, which were not "precluded" as the order suggests; therefore, Defendant was not afforded a proper appeal under the Fourteenth Amendment. Hence this court must now accept review and address

each of Defendant's four claims.

(*Id.* at 10-11.)

It might be argued that Petitioner's closing reference to the failure to address the claims explicitly raised by Petitioner was intended as a limitation on the extent of his claim.  But the Arizona Court of Appeals did not so read this claim.  Rather, that court saw the claim as asking for an independent review by the court for fundamental error:

> In a related argument, Pacheco argues that, as a pleading defendant filing an of-right Rule 32 petition, he is entitled to fundamental error review. However, Pacheco is not entitled to fundamental error review by this court. *See State v. Smith,* 184 Ariz. 456. 459. 910 P.2d 1. 4 (1996) (appellate court not required to conduct fundamental error review in deciding whether to grant review of denial of pleading defendant's petition for post-conviction relief).

(Exhibit K, Mem. Dec. at ¶ 4 (emphasis in original).)

*Smith,* which the Arizona Court of Appeals cited, reviewed the appropriate process when a pleading defendant files an of-right PCR petition and counsel finds no issue for review.  The *Smith* court summarized:

> As in constitutionally guaranteed direct appeals by non-pleading defendants, should counsel be unable to proceed, he or she must so notify the court and the client. *See State v. Shattuck*, 140 Ariz. 582, 585, 684 P.2d 154, 156 (1984). …After counsel or the pro per defendant submits the post-conviction petition to the court and the trial court makes its required review and disposition, counsel's obligations are at an end.  *See Shattuck*, 140 Ariz. at 585, 684 P.2d at 156. Following the trial court's disposition, counsel need only inform the defendant of the status and defendant's future options, unless counsel's review, or that of the trial court, reveals an issue appropriate for submission to the court of appeals.

*Smith*, 184 Ariz. at 459, 910 P.2d at 4.  *Smith* went on to hold that once the review by the trial court was complete, the defendant was not entitled to a second *Anders* review by the Arizona Court of Appeals.  "A pleading defendant is entitled to petition for review pursuant to Rule 32.9, but the grant or denial of review is discretionary for the court of appeals, which, subsequent to the repeal of A.R.S. § 13-4035, need not review for fundamental error when considering whether to grant or deny review."  *State v. Smith*, 184 Ariz. 456, 460, 910 P.2d 1, 5 (1996).

Similarly, *Shattuck*, on which *Smith* relied, addressed in the context of a direct

28

appeal whether *Anders* review was required by the Arizona Supreme Court when it reviewed a lower appellate decision applying *Anders*, and concluded it was not.  The *Shattuck* Court quoted the comments to the rule providing for petitions for review by the Arizona Supreme Court, which provided:

> Once the defendant has been given the appeal to which he has a right, state remedies have been exhausted. The defendant, of course, may petition for review pro per. We will consider the grounds set forth in such petitions, but will not search the record for error. We do not read *Anders* to require that procedure at every level of the appellate process.

*Shattuck*, 140 Ariz. at 585, 684 P.2d at 157 (quoting Ariz. R. Crim. Proc. 31.19, Comments).  The *Shattuck* court held:

> Since we are not required to accept petitions for review in *Anders* type cases, we do not invite them. The system is strained to the point that we cannot afford the luxury of repeated review of trivia or issues of small merit. The time available to prosecutors, defenders, judicial staff and judges must be devoted to issues of substance.

*Id*

Thus, the Arizona Court of Appeals recognized Petitioner's call for *Anders* review for error, but resolved it by looking the law governing review by that reviewing appellate court, not the trial court who was the original appellate court. Thus, the Arizona Court of Appeals recognized that Petitioner's claims extended beyond an attack on the format of the trial court's denial, and was a call for a court's independent review for error.

## 2.  Waiver on Habeas

Respondents argue that Petitioner waived any *Anders* claim by not raising it in his habeas petition.

Petitioner, although continuing the terminology of fundamental error review, clearly adopts in his Supplemental Reply the construction of this Ground as asserting a failure to conduct the required review under *Anders*.  (*See* Supplemental Reply, Doc. 18 at 1-2.)  While reaffirming of this Court's construction, certainly raising the claim in that reply would not be sufficient.

> A Traverse is not the proper pleading to raise additional grounds for relief. In order for the State to be properly advised of additional claims, they should be presented in an amended petition or, as ordered in this case, in a statement of additional grounds. Then the State can answer and the action can proceed…Habeas claims that are not raised before the district court in the petition are not cognizable on appeal.

*Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)

However, because the undersigned finds that Petitioner properly raised his *Anders* argument in his *Petition*, there is no waiver.   And by allowing supplementation, the Court has allowed Respondents ample opportunity to answer the claim.

## 3.  Exhaustion and Procedural Default

### a.   Parties' Arguments

Respondents argue that this claim was not properly exhausted, and is now procedurally defaulted, because he did not present his *Anders* claim to the trial court, and thus did not invoke a complete round of review, and did not fairly present the claim to the appellate court. (Supp. Ans., Doc. 16 at 5-6.)   Respondents also argue that Petitioner's utilization of the term "fundamental error review" was not fair presentation because of the special meaning of such terms under Arizona law.  (*Id.* at 6.)

Petitioner replies that a demand for *Anders* review by the trial court was superfluous, given the requirement under the Arizona Rules of Criminal Procedure that the trial court "make a final adjudication of all the petitioner's claims - - those lurking in the background as well as those specified."   Ariz. R. Crim. Proc. 32.6, Comment. Petitioner further argues that the ineffective assistance of PCR counsel, his limited knowledge of English and dependence on other inmates, constitutes cause for his failure to properly exhaust any claims.  (Doc. 18.)

### b.   Exhaustion Requirement

 Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3

(1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

### (1).  <u>Actual Consideration</u>

A state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Moreover, where a petitioner presents a claim and the state court disposes of it on the false belief that it was previously rejected it on the merits, the claim should be deemed exhausted.  *See Cone v. Bell*, 129 S.Ct. 1769 (2009).

### (2).  <u>Fair Presentation</u>

On the other hand, actual consideration of the claim is not required.   "All exhaustion requires is that the state courts have the opportunity to remedy an error, not that they actually took advantage of the opportunity."  *Scott v. Schriro*, 567 F.3d 573, 583 (9th Cir. 2009).  Thus, even without a claim actually being considered by the state courts, a habeas petitioner may exhaust his state remedies by fairly presenting his claim to the state courts. "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**<u>Proper Forum</u>** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998

(9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

However, that does not mean that presentation to the Arizona Court of Appeals, is always sufficient for a fair presentation.   "Whether a claim is exhausted through a direct appellate procedure, a post-conviction procedure, or both, the claim should be raised at all appellate stages afforded under state law as of right by that procedure."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998)).   Thus, "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor' . . . [r]aising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'"  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).   Therefore, where a petitioner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them."  *Casey*, 386 F.3d at 918.

However, failure to present to the trial court ordinarily does not prevent exhaustion; all that is required is presentation "at all *appellate* stages."  *Casey*, 386 F.3d at 916 (emphasis added).   "If the petitioner fails to raise a federal claim at trial (or if the claim was not cognizable at all or did not arise until after trial), the petitioner satisfies the exhaustion requirement by raising the claim on appeal, on a motion for rehearing of the appeal, or even in a delayed appeal."  Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure,* § 23.3b (5th ed. 2001).  Still, the failure to present to the trial court might prevent habeas review if it results in the appellate court applying a procedural bar which qualifies as an "independent and adequate state ground".

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative

avenues of reviewing constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petitioner must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim. A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts. Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983). And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies. *Duncan v. Henry*, 513 U.S. 364, 366 (1995). While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*). "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003). But a drive-by-citation of a state case applying federal and state law is not sufficient.

For a federal issue to be presented by the citation of a state decision

dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Proper Mode** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached to petition and incorporated by reference were fairly presented).

### c.   Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

### d.   Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a

34

state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

### e.   Application to Petitioner's Claims

#### (1).  Actual Consideration

Here, the Arizona Court of Appeals actually considered Petitioner's *Anders* argument.

Petitioner's argument was that the trial court had acted improperly in failing to proceed under *Anders*.  As relief, Petitioner requested that the Court of Appeals perform the review. (Exhibit J, PFR at 10-11.)  The Arizona Court of Appeals took up that issue, applying the language of "fundamental error review."  (Exhibit K, Mem. Dec. at ¶ 4 ("Pacheco argues that, as a pleading defendant filing an of-right Rule 32 petition, he is entitled to fundamental error review").)

Nonetheless, rather than finding error in the trial court's failure to conduct *Anders* review and remanding for proper review, the court of appeals focused on its own lack of responsibility to undertake such review, concluding that "Pacheco is not entitled to fundamental error review by this court."   The court supported its conclusion by citing to *State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).  As discussed herein above in Section III(D)(1), *Smith* was an *Anders* case concluding that a second review for error was not necessary when the case proceeded to the Arizona Court of Appeals.

This side step by the Arizona Court of Appeals is understandable for two reasons. First, because Petitioner's request for relief in the form of review by the Court of Appeals (rather than remand for review by the trial court) was legally flawed. Nonetheless, that request for relief did not vitiate his plainly asserted error of lack of such review by the trial court.

Second, in *Smith*, the majority appeared to mandate an *Anders* review by the trial court in an of-right PCR.

> After counsel or the pro per defendant submits the post-conviction petition to the court and the trial court makes its required review and disposition, counsel's obligations are at an end. Following the trial court's disposition, counsel need only inform the defendant of the status and defendant's future options, unless counsel's review, *or that of the trial court*, reveals an issue appropriate for submission to the court of appeals

*Smith*, 184 Ariz. at 459 (emphasis added).   But as noted by then Justice Martone, the majority's approach was incongruent with a prior disclaimer of *Anders* review in the trial court:

> So we are still left with uncertainty. A Rule 32 proceeding in the trial court is a constitutionally required form of appellate review, but neither that court, nor the court of appeals, need perform a fundamental error review. If, as the majority says, "the trial court performs the initial appellate review providing the only appeal as of constitutional right from the plea or admission," but the trial court need not perform a review even where constitutionally required under *Anders*, then the majority is properly evolving toward an understanding that a Rule 32 proceeding, wherever located, is not a constitutionally required form of appellate review for pleading defendants.

*Smith*, 184 Ariz. at 461 (citations omitted) (Martone, J., dissenting).  Justice Martone's reference to uncertainty was directed to the then recent decision of the Arizona Supreme Court in *Wilson v. Ellis*, 176 Ariz. 121, 859 P.2d 744 (1993), where the justice had argued in dissent that even an of-right PCR proceeding should not be considered an appeal.  But, in *Wilson*, the majority of the court had opined: "Contrary to the intimations of the dissent [Justice Martone], we are not commanding, nor do we want, trial courts to conduct *Anders*-type reviews in PCRs."  *Id.* at 124, 859 P.2d at 747.

In light of that philosophical confusion, but the Arizona Supreme Court's clear

mandate, it is not surprising that the Arizona Court of Appeals identified Petitioner's claim and actually considered it, but resolved it by focusing on that court's own review rather than the trial court's review.

### (2). <u>Fair Presentation</u>

Even if the Arizona Court of Appeals had not actually considered Petitioner's *Anders* claim, Petitioner fairly presented that claim in his Petition for Review.

### (a). *Reference to Fundamental Error*

Respondents argue that Petitioner's did not fairly present his *Anders* claim because he utilized the language of "fundamental error," a term of art referencing state law review, not review under *Anders*. This argument is unpersuasive given the practice of the Arizona courts of couching their *Anders* review in terms of "fundamental error." (*See infra* Section III(D)(1) Nature of the Claim (discussing application of term fundamental error in *Anders* review).)

### (b). *Failure to Argue to Trial court*

Respondents also argue that Petitioner's presentation of the claim to the Arizona Court of Appeals was not fair because he had not raised the claim in the trial court.

It is true that Petitioner did not assert to the trial court the right to an *Anders* review of his case. (*See* Exhibit G, Notice of No Claim; and Exhibit H PCR Petition.) Thus, this matter was raised for the first time to a reviewing appellate court, the Arizona Court of Appeals.

Of course, ordinarily presentation to the trial court is not necessary to a fair presentation, although such failure may result in a procedural bar being applied. That principle does not apply, however, in the context of an Arizona of-right PCR petition, where the Superior Court does not function as a trial court, but as an appellate court. *See State v. Smith*, 184 Ariz. 456, 458, 910 P.2d 1, 3 (1996) ("the trial court provides the

pleading defendant a form of post-conviction appellate review via motion under Rule 32").

Skilling levels of appellate review is ordinarily not fair presentation. Where a petitioner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them." *Casey*, 386 F.3d at 918.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added). "Whether a claim is exhausted through a direct appellate procedure, a postconviction procedure, or both, the claim should be raised at all appellate stages afforded under state law as of right by that procedure." *Id*. (*citing Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989)).

*Casey*, 386 F.3d at 916.

And in this instance, review by the Arizona Court of Appeals in PCR proceedings is discretionary. "The appellate court may, in its discretion, grant review."  Ariz. R. Crim. Proc. 32.9(f).  Moreover, that court "ordinarily do[es] not consider issues on review that have not been considered and decided by the trial court; this is particularly true when we are reviewing a court's decision to grant or deny post-conviction relief under Rule 32." *State v. Vera*, 235 Ariz. 571, 573, ¶ 8, 334 P.3d 754, 756 (App. 2014), cert. denied, 136 S. Ct. 121 (2015).

But, an argument under *Anders* is not, in the sense used in *Casey* or *Vera*, a claim. *Anders* does not, by itself, govern the conduct of trial or establish the validity or invalidity of a conviction or sentence.   Rather, *Anders* functions as a procedural standard of review to be applied by the appellate court (in this case the trial court in an of-right PCR proceeding) when appointed counsel has been unable to find a claim for review.

In that context, faulting Petitioner for not asking for application of *Anders* makes no more sense than expecting Petitioner to have made request that the trial court not reject his claims on the basis of his race, in order to preserve a challenge to an order

1  doing just that.  Respondents point to no authority requiring such a request as a predicate

2  for subsequently raising an *Anders* claim.  The undersigned has found none.

3      To the contrary, Arizona's requirement for presentation of matters to the trial

4  court has a recognized exception when presentation was procedurally impractical.  For

5  example, in *State v. Vermuele*, 226 Ariz. 399, 402, ¶ 9, 249 P.3d 1099, 1102 (App.

6  2011), the court observed that the defendant "had no clear procedural opportunity to

7  challenge the rendition of sentence before it became final. Because a defendant cannot

8  forfeit an opportunity that the defendant does not have, her failure to challenge the

9  sentence at the sentencing hearing cannot be fairly characterized as a forfeiture or

10  waiver."  *See also Cruz v. Garcia,* 240 Ariz. 234, ¶ 10 (App. 2016) (claim based on

11  findings first made in custody order not required to be raised in trial court).

12      And in the particular context of review of in a PCR proceeding, Arizona has

13  eliminated it's requirement for  motions for rehearing in the trial court as a prerequisite

14  to review by the Arizona Court of Appeals.  The Rule now provides: "The filing of a

15  motion for rehearing in the trial court is not a prerequisite to the filing of a petition for

16  review pursuant to paragraph (c) of this rule."  Ariz. R. Crim. Proc. 32.9(a).

17      In *Barrett v. Acevedo*, 143 F.3d 449 (8th Cir. 1998), *rev'd on other grounds*, 169

18  F.3d 1155 (8th Cir. 1999) (*en banc*), the Eighth Circuit similarly recognized that

19  presentation at every level is not required for exhaustion when the claim arose in the

20  omitted level's ruling.

> We reverse on the exhaustion issue because Barrett, by raising the
> constitutional violation in his petition for rehearing to the Supreme
> Court of Iowa, fairly presented his claim. Obviously this was his
> first opportunity to raise the issue in state court because the alleged
> constitutional error did not occur until the Supreme Court of Iowa
> ruled. We believe that raising the issue at that point was sufficient.
> *See* II J. Liebman & R. Hertz, *Federal Habeas Corpus Practice and
> Procedure* § 23.3b, at 669 (2d ed. 1994) ("If the petitioner fails to
> raise a federal claim at trial (or if the claim was not cognizable at or
> did not arise until after trial), the petitioner satisfies the exhaustion
> requirement by raising the claim ... on a motion for rehearing of the
> appeal."); *see also Herndon v. Georgia*, 295 U.S. 441, 444, 55 S.Ct.
> 794, 795, 79 L.Ed. 1530 (1935) ("There is no doubt that the federal
> claim was timely if the ruling of the state court could not have been

anticipated and a petition for rehearing presented the first opportunity for raising it.")

*Id.* at 462.

So too here, Petitioner's challenge to the trial court's failure to fulfill its obligations under *Anders* did not occur until the trial court ruled.   Consequently, Petitioner's failure to raise the matter in the trial court did not preclude its fair presentation to the Arizona Court of Appeals.

### (3).  No Procedural Bar Applied

Nor is there any basis to conclude that the Arizona Court of Appeals actually applied such a waiver rule to Petitioner's *Anders* claim.  The Arizona Court of Appeals did not explicitly apply such a rule, but instead addressed the merits of the claim, albeit by applying the rule applicable to review on a second-level of appeal.

No mention was made by the Arizona Court of Appeals of Petitioner's failure to raise the argument in the trial court.  The only procedural rules discussed by the Arizona Court of Appeals were the preclusion and timeliness rules for PCR petitions (Exhibit K, Mem. Dec. at ¶ 5), and the contention that Petitioner had not adequately argued claims regarding counsel's deficient performance (*id.* at ¶ 6).  The latter was not applied to Petitioner's *Anders* argument, and could not be deemed to have been applied inferentially in light of Petitioner's explicit arguments on *Anders*.   The former discussion, rather than the demonstrating the application of the preclusion or untimeliness rules, was an implicit acknowledgement that no preclusion or untimeliness defense applied (which it would not in a timely, first, of-right PCR proceeding), but that the trial court had nonetheless reached the "right result" in its alternative decision on the merits, and thus reversal was not required.  (*Id.*)

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Thus, the habeas court must "rely on the

'presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis.' " *Runningeagle v. Ryan*, 686 F.3d 758, 769 (9th Cir. 2012) (quoting *Richter*).  Thus, to the extent that there might be some reason to suggest the Arizona court rejected the claim on procedural grounds, it would at best be unclear, and the presumption would require that this Court treat the decision as one on the merits.

### f.   Summary Re Exhaustion

Based upon the foregoing, the undersigned concludes that Petitioner properly exhausted his state remedies as to his *Anders* claim in Ground 4, both through actual consideration by the Arizona Court of Appeals, and by fair presentation to that court.

## 4.  Merits of *Anders* Claim

In the Supplemental Answer (Doc. 16), Respondents argue that Petitioner's *Anders* claim is without merit because *Anders* applies only to direct appeals, and not to discretionary post-conviction collateral attacks, citing *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987).  Respondents concede that an Arizona of-right PCR proceeding is for some purposes the equivalent of direct appeal, but argue that the Arizona courts have consistently refused to extend *Anders* to such proceedings.   Respondents argue that practical distinctions call for different treatment, referencing the limited record available because of the guilty plea underlying most of-right PCR proceedings, and the waiver of most claims as a result of the guilty plea.  As a result, Respondents argue "there is little to be gained by extending *Anders* procedures" to these defendants.   Respondents further argue that requiring PCR counsel to advise the court of matters outside the record would risk invasion of counsel's duties to his client of loyalty and confidentiality.  Respondents further argue that the *Anders* procedure is prophylactic, not mandatory, and Arizona's procedure under Ariz. R. Crim. Proc. 32.4(c)(2) is adequate and was complied with in this case.

In addition to arguing the merits of various substantive claims, Petitioner replies that Arizona Rule of Criminal Procedure 32.6(c) incorporates an *Anders* type of review into PCR proceedings, any failure to exhaust his state remedies was caused by ineffective assistance of counsel, Petitioner's limited knowledge of English and inability to read or write English, and dependence upon other inmates for assistance.   (Supp. Reply, Doc. 18.)

### a.   Decision of Arizona Court

This Court must undertake a *de novo* review of Petitioner's *Anders*  claim, regardless whether this claim is deemed actually considered on the merits by the Arizona Court of Appeals, or merely deemed fairly presented.

### (1).   Contrary To Supreme Court Law

The undersigned finds that the Arizona Court of Appeals resolved Petitioner's *Anders* claim on the merits.   Accordingly, as discussed *supra* in Section III(A)(3), this Court may generally grant relief only if that decision was "contrary to or an unreasonable application of" Supreme Court law.   28 U.S.C. § 2254(d).

 A state court's "use of the wrong legal rule or framework do constitute error under the 'contrary to' prong of § 2254(d)(1)." *Frantz v. Hazey*, 533 F.3d 724, 734 (9th Cir.2008) (*en banc*)).

The Arizona Court of Appeals focused narrowly upon whether it was required to conduct its own *Anders* review, and failed to apply the appropriate standard of determining whether such review was required in the first-level, of right review, *i.e.* that in the trial court.[3]   As a result, the court's decision was "contrary to" the law as adopted

---

[3] At least arguably, the appellate court was not required to conduct such review, because *Anders* only applies to first tier of-right review.   And review in a PCR proceeding by the Arizona Court of Appeals is neither first tier (the trial court is the first tier), nor of-right, the review by such court being plainly discretionary.   *See* Ariz. R. Crim. Proc. 32.9(f) ("appellate court may, in its discretion, grant review").   But, as discussed hereinafter, the same is not true of the trial court's first-level, of-right review.

in *Finley* and *Halbert* regarding first level review.

Of course, because the Arizona court focused on the wrong level of review, it reached no conclusions contrary to those reached herein.  It simply applied the wrong standard, and having done so, (as discussed *infra*) wrongly concluded that *Anders* had not been violated.

Of course, that legal error only opens the door to relief under 28 U.S.C. § 2254(d). It does not establish that Plaintiff's claim has merit.

The Arizona court having applied the wrong standard, this Court reviews the matter *de novo* to decide whether Petitioner's claim has merit, *i.e.* whether his rights under *Anders* were violated.

> To identify a § 2254(d)(1) "contrary to" error, we analyze the court's actual reasoning, to the extent that the Supreme Court has dictated how a state court's reasoning should proceed. Identification of such an error is not the end of a federal habeas court's analysis, however, unless that identification necessarily means that the state court's determination of the ultimate constitutional or legal question is also wrong. Instead, pursuant to § 2254(a) and pre-AEDPA standards of review, we must also evaluate *de novo* the petitioner's constitutional claims, without limiting ourselves to the reasoning of the state court.

*Frantz*, 533 F.3d at 739.


**(2).  No Merits Decision**

Alternatively, it might be argued (contrary to the conclusion reached herein) that the Arizona Court of Appeals did not take up Petitioner's argument regarding his right to *Anders* review by the trial court, and instead only decided the issue (not raised by Petitioner) that he was entitled to *Anders* review by the Arizona Court of Appeals.   In that instance, Petitioner's *Anders* claim regarding trial court review (although still fairly presented) was not addressed on the merits.

The limitations of 28 U.S.C. § 2254(d) only apply to a "claim that was adjudicated on the merits in State court proceedings."  In the absence of the limitations of § 2254(d), this habeas court resolves constitutional issues *de novo*.  *Frantz*, 533 F.3d

1   at 735-736.

2

3       **b.  Applicability of *Anders***

4       The right to *Anders* review "was based on the underlying constitutional right to

5   appointed counsel," *Finley*, 481 U.S. at 554, and "established a prophylactic framework

6   that is relevant when, and only when, a litigant has a previously established

7   constitutional right to counsel." *Id.* at 555.

8       In three other cases in the District of Arizona, the courts have concluded that an

9   Arizona pleading defendant has a federal constitutional right to counsel in an of-right

10   PCR proceeding. *See Walker v. Ryan*, 2015 WL 10575864, at *5 (D. Ariz. Oct. 21, 2015)

11   report and recommendation adopted, CV-15-00072-PHX-ROS(BSB), 2016 WL 1268487

12   (D. Ariz. Mar. 31, 2016); *Ree v. Ryan*, CV-13-00746-TUC-RM(LAB), 2015 WL

13   3889360, at *1 (D. Ariz. June 23, 2015); and *White v. Ryan*, CV-15-2482-PHX-JJT,

14   2016 WL 4650002, at *14 (D. Ariz. May 2, 2016), report and recommendation adopted,

15   CV-15-02482-PHX-JJT, 2016 WL 4592083 (D. Ariz. Sept. 2, 2016).

16       Indeed, the Arizona Court of Appeals has previously held that there is a federal

17   constitutional right to counsel in Arizona's of right PCR proceedings:

18          In Arizona, though, a defendant in a non-capital case who pleads
           guilty or no contest waives his right to a direct appeal. Rule 32 thus
19          becomes "the only means available for exercising [his]
           constitutional right to appellate review." Therefore, a pleading
20          defendant such as Pruett is constitutionally entitled to the effective
           assistance of counsel on his first petition for post-conviction relief,
21          the counterpart of a direct appeal.

22   *State v. Pruett*, 185 Ariz. 128, 130–31, 912 P.2d 1357, 1359–60 (App. 1995) (citations

23   omitted) (citing *Finley* and other U.S. Supreme Court decisions regarding the federal

24   right to counsel).  *See Summers v. Schriro*, 481 F.3d 710, 716 (9th Cir. 2007) (quoting

25   *Pruett*).  *Cf. State v. Krum*, 183 Ariz. 288, 295 and n.5, 903 P.2d 596, 603 and n.5 (1995)

26   (concluding "there is no federal constitutional right to effective counsel in a PCR

27   proceeding" in a PCR proceeding "at least when a defendant is entitled to a direct

28   appeal").

Respondents principally reply on *Finley* for their contention that Petitioner did not have a constitutional right to counsel in his PCR proceeding. [4]  In *Finley*, the Court declined to apply *Anders* to a Pennsylvania post-conviction relief proceeding.  The Court recognized that "the right to appointed counsel extends to the first appeal of right, and no further," and not to "discretionary appeals," whether "on direct review" or on "postconviction review." 481 U.S. at 555.[5]  The Court clarified that it was only a constitutional right to counsel, and not some other right (e.g. under state law), which triggered *Anders*.  *Id.* at 556.  And, the Court declined to extend the constitutional right to counsel to PCR proceedings, finding that they "are not part of the criminal proceeding itself, are civil in nature, and normally occur only after failure to receive relief on direct review. *Id.* at 557.

Thus *Finley* was based upon the absence of a right to counsel in the Pennsylvania post-conviction proceeding, which it found because the proceeding: (1) was not "of-right" but discretionary; (2) was not a first appeal, but after direct review; and (3) was not part of the criminal proceeding, but a separate civil proceeding.

Here, however, Petitioner's PCR proceeding was: (1) of-right; (2) a first level review; and (3) a direct appeal within the criminal proceeding, not a collateral, civil proceeding.

### (1).  "Of Right"

Respondents follow in the steps of the Arizona Court of Appeals and argue that

---

[4] In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Court noted that it had not yet recognized a right to counsel in post-conviction relief proceedings that constituted a defendant's first opportunity to bring a challenge of ineffective assistance of PCR counsel, but noted that because such a post conviction proceeding was the prisoner's one and only appeal on such a claim "this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings." 132 S. Ct. at 1315.  While suggesting an in road on *Finley* in addition to that adopted in *Halbert, Martinez* did not involve an of-right PCR proceeding deemed under state law to be the equivalent of direct appeal.  Accordingly, the Court's equivocation in *Martinez* does not control this case.

[5] In *Murray v. Giarratano*, 492 U.S. 1, 7 (1989), the Court reaffirmed *Finley,* and declined to find an exception for cases involving the death penalty.

Petitioner had no rights under *Anders* because review by the Arizona Court of Appeals was discretionary. (Supp. Ans., Doc. 16 at 10.)    But Petitioner's claim is and was that he was entitled to such review in the trial court.

Respondents make no contention that Petitioner's right to review by the trial court was not "of right."   Indeed, the Arizona Courts have concluded that such review is mandated by and satisfies the Arizona Constitution's guarantee of an appeal.

> Arizona's constitution guarantees that every criminal defendant "shall have ... the right to appeal in all cases." Ariz. Const. art. 2, § 24…Rule 32 incorporates this appeal right: "Any person who pled guilty ... shall have the right to file a post-conviction relief proceeding, and this proceeding shall be known as a Rule 32 of-right proceeding." Ariz. R.Crim. P. 32.1. Thus, even though this matter is a post-conviction relief proceeding, by virtue of Article 2, Section 24 of the Arizona Constitution, as interpreted by *Montgomery*, it is the functional equivalent of a direct appeal.

*State v. Ward*, 211 Ariz. 158, 161–62, ¶ 9, 118 P.3d 1122, 1125–26 (App. 2005)  *See also Montgomery v. Sheldon*, 181 Ariz. 256, 259–60, 889 P.2d 614, 617–18, op. supp., 182 Ariz. 118, 893 P.2d 1281 (1995).[6]

## (2).  First Level

Moreover, unlike the defendant in *Finley*, Petitioner and other pleading Arizona defendants, have no prior right to appeal.   *See* Ariz. Rev. Stat. § 13-4033(B); Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).  Like the defendant in *Halbert v. Michigan*, 545 U.S. 605 (2005) (finding constitutional right to counsel in application for leave to file discretionary appeal), the Arizona pleading defendant's of-right PCR petition is "the first, and likely the only, direct review the defendant's conviction and sentence will receive."   *Id.* at 619.

---

[6] The Arizona Rules of Criminal Procedure also classify a pleading defendant's timely, first PCR proceeding as an "of right" proceeding. Ariz. R. Crim. Proc. 32.1.  But this does not appear to alter the discretion of the trial court to address the claims or the petition, *see* Ariz. R. Crim. Proc. 32.6(c) (mandating review of claims in all PCR petitions), merely to mandate appointment of counsel, *see* Ariz. R. Crim. Proc. 32.4(c)(2) (appointment of counsel for of-right proceedings).  Therefore, under the bare language of the Arizona Rules of Criminal Procedure, at least in the trial court all Arizona PCR petitions are arguably of right, and not discretionary.

Arizona's "of right" PCR proceedings are intentionally in lieu of direct review, and are not a defendant's second bite at review, but his first bite, and his review in the trial court is his only non-discretionary bite.

### (3).  Appellate in Nature

Finally, the *Finley* court relied upon the determination that the post conviction proceeding in that case was not appellate in nature, but a collateral attack on the conviction.

While Petitioner's of-right proceeding is denominated a post conviction proceeding, it is the function of the proceeding not its nomenclature which controls.  In *Halbert v. Michigan*, 545 U.S. 605 (2005), the Supreme Court "signal[ed] that some non-traditional state review procedures are forms of direct rather than collateral review," which the Ninth Circuit concluded "casts doubt on the validity of our assumption in *Isley* [*v. Arizona Department of Corrections*, 383 F.3d 1054 (9th Cir.2004)'" that "a Rule 32 of-right proceeding is a form of collateral review under § 2244(d)(2)."  *Summers v. Schriro*, 481 F.3d 710, 713, 712 (9th Cir. 2007).  Indeed, in *White v. Ryan*, CV-15-2482-PHX-JJT, 2016 WL 4650002, at *14 (D. Ariz. May 2, 2016), report and recommendation adopted, CV-15-02482-PHX-JJT, 2016 WL 4592083 (D. Ariz. Sept. 2, 2016), where the Court found a constitutional right to counsel in an Arizona of-right PCR proceeding, the respondents (the same as Respondents herein), argued that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) did not apply because: "Petitioner's of-right PCR proceedings were not collateral in nature rather, they were the functional equivalent of a direct appeal."   CV-15-02482-PHX-JJT, Limited Answer, Doc. 7 at 11, n.10.

"[T]he Supreme Court held in [*Halbert*]…that a first-tier 'of-right' review procedure available to a plea-convicted Michigan defendant in lieu of a conventional direct appeal is a form of 'direct review' to which a constitutional right to counsel attaches." *Summers*, 481 F.3d at 713.  Like Arizona, Michigan had precluded pleading defendants from filing a direct appeal as a matter of right.  Michigan erected a system

that required pleading defendants to first file *pro se* an application for leave to appeal, which applications were uniformly rejected because of "'lack of merit in the grounds presented.'"  *Id.* at 612.   The Court equated that application for leave to appeal to a direct appeal based on two factors: (1) the consideration of the merits of the claims in the leave process; and (2) that indigent defendants were ill equipped to represent themselves in the process.  *Id.* at 617.  The Court contrasted discretionary appeals where the exercise of discretion was founded upon  "the general importance of the questions presented," and not just the "merits of the particular defendant's claims."  *Id.* at 619.  The Court observed that the application "was the first, and likely only, direct review the defendant's conviction and sentence will receive" when the defendant was "disarmed."  *Id.*

Thus, the Court has recognized that regardless of the nomenclature applied to a state review process, if it functionally constitutes a first level of appellate review, counsel is constitutionally required.

Similarly, here, Petitioner's of-right PCR proceeding is the equivalent of a direct appeal.   In *Summers*, the Ninth Circuit recognized that Arizona's of-right PCR proceeding is to be treated as direct appeal for purposes of triggering the habeas statute of limitations. 481 F.3d at 713. The Arizona courts have treated it as a direct appeal for purposes of satisfying the mandate of the Arizona Constitution that defendants be afforded a right of direct appeal.  *See Ward*, 211 Ariz. at 161–62, ¶ 9, 118 P.3d at 1125–26; *Montgomery*, 181 Ariz. at 259–60, 889 P.2d at 617–18.

Moreover, post-conviction proceedings are generally considered to be a separate civil case, "collateral" to the criminal case.   That was the basis for the distinction in *Finley*.   But in Arizona, the post-conviction relief case is neither collateral nor civil, but is a continuation of the original criminal case.  Arizona Rule of Criminal Procedure 32.3 provides:

> This [post conviction relief] proceeding is part of the original criminal action and not a separate action. It displaces and incorporates all trial court post-trial remedies except post-trial motions and habeas corpus.

Ariz. R. Crim. P. 32.3.  The comments to that Rule echo that characterization:

> This section provides that all Rule 32 proceedings, regardless of the grounds presented and their past characterizations, are to be treated as criminal actions. The characterization of the proceeding as criminal assures compensation for appointed counsel and the applicability of criminal standards for admissibility of evidence at an evidentiary hearing except as otherwise provided.

Ariz. R. Crim. P. 32.3, Comment.  Further, it generally is assigned to the sentencing judge.

> The proceeding shall be assigned to the sentencing judge where possible. If it appears that the sentencing judge's testimony will be relevant, that judge shall transfer the case to another judge.

Ariz. R. Crim. P. 32.4(e).  Even the filings in an Arizona PCR reflect that it is not collateral.  "The notice shall bear the caption of the original criminal action or actions to which it pertains." Ariz. R. Crim. P. 32.4(a).

Further, the service of the PCR notice is directed, at least in part, to the prosecuting attorney.  Ariz. R. Crim. Proc. 32.4(a).  A response is mandated from the "state", and the applicable Rule is denominated "Prosecutor's Response".  Ariz. R. Crim. Proc. 32.6(a).

Respondents argue that nonetheless the Arizona Courts "do not consider of-right PCR proceedings to be direct appeals in all cases," and thus have refused to extend *Anders* to them, citing *State v. McFord*, 609 P.2d 1077, 1080 (Ariz. App. 1980) and *State v. Thompson*, 679 P.2d 575, 577 (Ariz. App. 1984).   (Supp. Ans., Doc. 16 at 10.)  However, both of these cases were decided before the 1992 changes eliminating any direct appeal for pleading defendants.  *See* Crane McClennen, *Eliminating Appeals from Guilty Pleas; Making the Process More Efficient,* 29-NOV Ariz. Att'y, 15 (1992).  As such, these courts could not have been contemplating the effect of the subsequent decision in *Montgomery v. Sheldon*, 181 Ariz. 256, 889 P.2d 614 (1995).

In *McFord*, the Arizona Court of Appeals held that a motion for rehearing asking for plenary review under *Anders* did not meet the requirement necessary for appellate review under the previous state requirement to first seek rehearing.  In the course of so

doing, the court opined:

> Additionally, we are of the opinion that *Anders v. California* and
> *State v. Leon* were not intended to apply to rule 32 petitions for
> post-conviction relief with the exception of petitions filed in
> accordance with rule 32.1(f), 17 A.R.S., Rules of Criminal
> Procedure. In *Anders*, the Supreme Court was concerned with the
> duty of court-appointed counsel to prosecute and appeal from a
> criminal conviction. The decision in *Anders* was bottomed on the
> proposition that a criminal defendant has a constitutional right to
> full appellate review; however, there is no constitutional right to
> post-conviction review. We do note that rule 32.1(f) provides for a
> delayed appeal, and that this provision of the rule does preserve "the
> defendant's right to a general review of the record for fundamental
> error where his failure to file a timely appeal was not his fault."

125 Ariz. at 380, 609 P.2d at 1080.  Because such a procedure did not then exist, *McFord* did not involve an of-right PCR petition, but "petitioner's fourth and fifth petitions for post-conviction relief." 125 Ariz. at 378, 609 P.2d at 1078. Even still, the *McFord* court observed that there was at least one exception (Rule 32.1(f) where the PCR proceeding began to function as an appeal (e.g. seeking to file a delayed appeal) where *Anders* could apply.

In *Montgomery*, the Arizona Supreme Court observed that "[a] Rule 32 proceeding followed by appellate review, however, is similar to a direct appeal for an Arizona defendant who pleads guilty." 181 Ariz. at 260, 889 P.2d at 618. And, the court conceded that "[a]lthough the defendant may raise fewer issues in a PCR proceeding than in a direct appeal, under art. 2, § 24 the right to present those issues for judicial review when appointed counsel declines to do so should be the same." *Id.* However, based upon *Finley*, the court found no need to apply *Anders* because "*Anders* was based on a defendant's Fourteenth Amendment right to counsel in a first appeal and that there is no such right in state PCR proceedings." *Id.* But, since *Montgomery*, *Halbert* has taught us that *Finley* was an analysis based on function and not form.

Thus, based upon the recognition in *Halbert* that the nature of the proceeding, and not simply its denomination, determines whether there is a right of counsel, and that all of the factors on which *Finley* distinguished traditional post-conviction proceedings do not apply to Arizona's of-right PCR proceeding, the undersigned must conclude that

there is a federal constitutional right to counsel in such proceedings, and that *Anders'* equal rights protections also apply.  *See* McConville, *Protecting the Right to Effective Assistance of Capital Postconviction Counsel: The Scope of the Constitutional Obligation to Monitor Counsel Performance*, 66 U. Pitt. L. Rev. 521, 536 *et seq.* (2005) (discussing *Anders* as a way of insuring meaningful counsel in PCR proceedings).

### (4).  Practical Considerations

Respondents argue that this Court should look to the practical difficulties of applying *Anders* in the context of a Rule 32 of-right proceeding. Respondents point to: (a) the limited record (because the premise is a guilty plea); (b) the ability to introduce new evidence in a PCR proceeding, versus the  "closed record" in a traditional direct appeal; (c) the related need for PCR counsel to conduct investigations beyond the record and difficulty of the court evaluating those efforts; (d) the waiver of claims associated with a guilty plea; and (e) the potential ethical concerns (e.g. confidentiality) of PCR counsel advising the Court on ineffective assistance claims.

Assuming *arguendo* that such practical considerations could exempt a proceeding from application of *Anders*, the considerations presented here are not persuasive.

### (a).  *"Limited" Record*

Respondents argue that an *Anders* style review is inappropriate in of-right PCR proceedings because they generally only occur in instances of guilty pleas, and thus there is a limited record available for the PCR court to review.  As discussed hereinafter, that is not necessarily the case given the opportunity for appointed counsel to investigate and/or expand the record (both before and after the *Anders* brief).

Moreover, nothing in *Anders* suggests that an expansive record is a prerequisite for review.  That the record is limited and thus the required review limited may be fortuitous for the reviewing court, does not justify denying the pleading defendant the kind of assurance of equal protection mandated by *Anders*.

Moreover, the need for consideration of matters outside the record demonstrates the deficiency in Arizona's procedure under Rule 32.4(c), which calls for nothing more from PCR counsel than a notice that no "colorable" claim has been found.

Nor does *Anders* make any exception for pleading defendants. Nor have Respondents pointed to any other cases excepting pleading defendants from *Anders* in those jurisdictions where now and in the past defendants have retained a right of appeal.

Indeed, the nature of a conviction by plea suggests that *Anders* review is all the more appropriate. The smaller record makes the burden of *Anders* lighter, and the absence of a trial arguably heightens the need for competent review given the potential that a defendant has been convicted as a result of bad representation rather than on the basis of actual evidence.

### (b). *Not "Closed" Record*

Respondents argue that appeals lend themselves to an *Anders* style review by the appellate court because they presume a closed record, while post-conviction relief proceedings permit additions to the record. But *Anders,* decided in 1967, was spawned in an era when ineffective assistance claims (which regularly require an expanded record) were regularly addressed on appeal. *See e.g. State v. Guerrero*, 159 Ariz. 568, 569, 769 P.2d 1014, 1015 (1989) (first suggesting ineffective assistance claims be raised in PCR rather than on direct appeal). Indeed, by 1974, some seven years after *Anders*, only three states, Colorado, Alaska, and Arizona, had adopted post conviction relief proceedings. *See Criminal Procedure: Constitutionality of Colorado Post-Conviction Remedies Statute Allowing Retroactive Relief Under Changed Legal Standards People v. Herrera*, 46 U. Colo. L. Rev. 311, 312 (1974). Such claims could be addressed by a limited remand for an evidentiary hearing. *See e.g. State v. Zuck*, 134 Ariz. 509, 516, 658 P.2d 162, 169 (1982) (remanding from direct appeal for evidentiary hearing on claim of ineffective assistance of counsel). *See also* LaFave, et al., 3 Crim. Proc. § 11.7(e) (4th ed.) (discussing remand to supplement record on ineffectiveness claims).

Moreover, the *Anders* procedure is not limited to review by the appellate court. It is a two part process, consisting of a review and reporting by appointed counsel in a "brief referring to anything in the record that might arguably support the appeal," *Anders*, 386 U.S. at 744, followed by review by the court.

### (c). *Evaluation of Investigation*

Respondents argue that *Anders* should not apply because of the obligation of counsel to investigate matters outside the record, and the difficulty of the court evaluating the sufficiency of that investigation. But, as discussed *supra*, *Anders* was decided in a pre-PCR world, where claims such as ineffective assistance of counsel, etc. required investigation outside the formal court record even though only raisable on direct appeal.

Moreover, the court's review under *Anders* is not intended as a guarantee that every possible claim will be identified. Rather, *Anders* is an attempt to assure that an indigent defendant has representation that approximates that of retained counsel. "This procedure will assure penniless defendants the same rights and opportunities on appeal— as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel." *Anders*, 386 U.S. at 745. Even retained counsel (like appointed counsel) is not tasked to leave no stone unturned, but only to provide a reasonably competent investigation. *See Strickland*, 466 U.S. at 690 ("wide range of professionally competent assistance").

Finally, even in traditional direct appeal settings, the court is to some extent dependent upon the work of the appointed appellate counsel. "Counsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case." *Smith v. Robbins*, 528 U.S. at 281.

//

//

**(d).** *Waiver of Claims*

Respondents argue that *Anders* should not apply to Arizona's of right proceedings because it only applies to pleading defendants who have necessarily waived many of their rights and potential claims.  But Respondents point to no exception to *Anders* ever granted for cases of pleading defendants in jurisdictions where their cases are heard on direct appeal.

Moreover, the limited claims available indicates a lighter burden for both PCR counsel filing an *Anders* brief, and the PCR court in reviewing for error, hardly a justification for denying any review.

And, the limited claims available suggests an even greater importance in assuring that the pleading defendant's rights were protected at trial and on review.  *See* McCoy v. Court of Appeals of Wisconsin, Dist. 1, 486 U.S. 429, 442 (1988) ("the *Anders* brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated").


**(e).** *Ethical Concerns*

Finally, Respondents worry that mandating full *Anders* briefing and review by the PCR court will necessarily impede upon the defendant's rights to counsel by requiring the disclosure of confidences revealed by trial counsel to PCR counsel. Respondents cite no authority as support for their contention that this should excuse compliance with *Anders*.  (Supp. Ans. Doc.16 at 12.)

 The undersigned has similarly found no authority addressing this contention.

However, in *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429 (1988), the Court addressed similar ethical concerns under a Wisconsin procedure requiring that counsel filing an *Anders* brief not only reference any potential claims, but also include "a discussion of why the issue lacks merit."  *Id.* at 430.  The Court addressed concerns that doing so put appellate counsel in the role of *amicus curiae*, rather than fulfilling his ethical obligation to advocate for his client.  The Court saw no

1  contradiction:

2  > If an attorney can advise the court of his or her conclusion that an
3  > appeal is frivolous without impairment of the client's fundamental
   > rights, it must follow that no constitutional deprivation occurs when
4  > the attorney explains the basis for that conclusion. A supported
   > conclusion that the appeal is frivolous does not implicate Sixth or
5  > Fourteenth Amendment concerns to any greater extent than does a
   > bald conclusion.

6  *Id.* at 443.  "Every advocate has essentially the same professional responsibility whether

7  he or she accepted a retainer from a paying client or an appointment from a court." *Id.* at

8  438.

9       Moreover, in *Smith*, the Court explicitly acknowledged the potential ethical

10  concerns inherent in *Anders*.  "One of the most consistent criticisms, one with which we

11  wrestled in *McCoy*, is that *Anders* is in some tension both with counsel's ethical duty as

12  an officer of the court (which requires him not to present frivolous arguments) and also

13  with his duty to further his client's interests (which might not permit counsel to

14  characterize his client's claims as frivolous)."  528 U.S. at 281–82.   Nonetheless, the

15  Court continued to enforce the requirement for some effort to address the equal

16  protection concerns on which *Anders* was based, albeit not strict compliance with the

17  *Anders* procedure..

18       Similarly, here there is no ethical violation necessitated.  The burden imposed

19  under the procedure advocated in *Anders* is for counsel to file "a brief referring to

20  anything in the record that might arguably support the appeal."  386 U.S. at 744.  In

21  performing that function, counsel is not mandated to report all of his findings, and

22  certainly not that he do so verbatim.  And nothing in *Anders* suggests that counsel must

23  ignore either the interests or wishes of his client in presenting issues or facts supporting

24  the appeal.  Certainly, counsel is not mandated to act as an advocate for the prosecution,

25  even under the procedure in *McCoy*.

26       Accordingly, if the investigation revealed detrimental, confidential information

27  from trial counsel, or if Petitioner simply did not wish the confidential information

28  disclosed, nothing in *Anders* mandates that counsel nonetheless disclose the information.

To the extent that there might be overlap between a claim a client wishes to raise or that counsel believes should be raised and some detrimental confidential information, appellate counsel would remain free to consult with the defendant about his options in proceeding. And those discussions, as with all court representation, properly would include addressing counsel's duties of candor to the court. And nothing in *Anders* would prevent a withdrawal on ethical grounds by an attorney who could not meet his duty of candor on claims that the defendant wished to have counsel raise.

### (5). Summary re Applicability of *Anders*

Having concluded that there was a federal constitutional right to counsel in Petitioner's of-right PCR proceedings, and in the absence of any authorized exception, the undersigned must also conclude that such right requires compliance with *Anders*, if not by explicit compliance with the process adopted in *Anders*, then at least through some similarly prophylactic process that assures equal protection of indigent pleading defendants.

### c.   Violation of *Anders*

Respondents argue that even if *Anders* applies, the process outlined under Arizona Rule of Criminal Procedure 32.4 and followed in this case, meets the requirements under *Anders*. Respondents rely primarily on *Smith v. Robbins*, 528 U.S. 259, 265 (2000), where the Supreme Court explained, "[t]he procedure we sketched in *Anders* is a prophylactic one; the States are free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel."

### (1). *Anders* Procedure not Mandatory

In *Smith v. Robbins*, the Supreme Court reiterated that the prophylactic procedures outlined in *Anders* were not an exclusive means to remedy the equal protection concerns that arise when appointed counsel fails to identify an issue for

review.  "In [*Finley*], we explained that the *Anders* procedure is not 'an independent constitutional command,' but rather is just 'a prophylactic framework' that we established to vindicate the constitutional right to appellate counsel."  *Smith*, 528 U.S. at 273.

Thus, in *Smith*, the Court approved a process adopted in California in *People v. Wende*, 25 Cal.3d 436, 441–442, 158 Cal.Rptr. 839, 600 P.2d 1071, 1074–1075 (1979) which did not mandate a brief by counsel as specified in *Anders*:

> counsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case, with citations of the record. He also attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief. He further requests that the court independently examine the record for arguable issues. Unlike under the *Anders* procedure, counsel following *Wende* neither explicitly states that his review has led him to conclude that an appeal would be frivolous (although that is considered implicit) nor requests leave to withdraw. Instead, he is silent on the merits of the case and expresses his availability to brief any issues on which the court might desire briefing.

*Smith*, 528 U.S. at 265 (citations omitted). Thereafter, the burden shifted to the appellate court:

> The appellate court, upon receiving a "*Wende* brief," must "conduct a review of the entire record," regardless of whether the defendant has filed a pro se brief…If the appellate court, after its review of the record pursuant to *Wende*, also finds the appeal to be frivolous, it may affirm. If, however, it finds an arguable (i.e., nonfrivolous) issue, it orders briefing on that issue.

*Smith*, 528 U.S. at 265–66 (citations omitted).

### (2).  <u>Evaluation of Alternative Procedures</u>

The *Smith* Court went on to outline what was sufficient to "adequately safeguard a defendant's right to appellate counsel," and to "reasonably ensure[] that an indigent's appeal will be resolved in a way that is related to  the merit of that appeal."  528 U.S. at 278–79.  The Court focused on five factors:  (a) a criteria of frivolity; (b) counsel was provided until the appeal was deemed frivolous by the court; (c) the determination that the appeal was frivolous by counsel *and* the court; (d) counsel did not file a bare "no

merits" notice; and (e) review was not provided by the trial judge.  *See* Duggan and Moeller, *Make Way for the ABA: Smith v. Robbins Clears A Path for Anders Alternatives*, 3 J. App. Prac. & Process 65, 91–92 (2001).

As discussed hereafter, the procedure mandated by Arizona Rule of Criminal Procedure 32.4(c) and followed in Petitioner's case does not meet those requirements.

**(a).** *Criteria of Frivolity*

First, the Court observed that the procedure in *Anders*, unlike the *Wende* procedure, "did not require either counsel or the court to determine that the appeal was frivolous; instead, the procedure required only that they determine that the defendant was unlikely to prevail on appeal." *Smith*, 528 U.S. at 279.

Here, the procedure under Rule 32.4(c) mandates that counsel make a finding of frivolity, albeit in the language of "colorable claim":

> In a Rule 32 of-right proceeding, counsel shall investigate the defendant's case for any and all colorable claims.  If counsel determines there are no colorable claims which can be raised on the defendant's behalf, counsel shall file a notice advising the court of this determination. Counsel's role is then limited to acting as advisory counsel until the trial court's final determination. Upon receipt of the notice, the court shall extend the time for filing a petition by the defendant in propria persona.

Ariz. R. Crim. P. 32.4(c)(2).   In Arizona, a "colorable claim is 'one that, if the allegations are true, might have changed the outcome.' " *State v. Bennett*, 213 Ariz. 562, 567, ¶ 21, 146 P.3d 63, 68 (2006) (quoting *State v. Runningeagle*, 176 Ariz. 59, 63, 859 P.2d 169, 173 (1993)) (applying the *Runningeagle* definition to find a right to an evidentiary hearing under Ariz. R. Crim. Proc. 32.8).   Assuming *arguendo* that a claim that is not colorable is frivolous, Rule 32.4(c)(2) requires a finding of frivolity by counsel.

However, in evaluating a no-colorable claim notice and a subsequent *pro per* petition, the Arizona courts do not apply a standard of finding that the appeal (or the proceeding) is frivolous, after conducting their own review of the record.  Instead, the

PCR courts simply address whatever claims have been raised by the defendant or his counsel.

> That is not to say, however, that an *Anders*-like review for fundamental error is required whenever a defendant exercises the right to file a PCR petition. We reject that idea, as we have before. *Wilson* [*v. Ellis*, 176 Ariz. 121, 124, 859 P.2d 744, 7474 (1993)] ("[We] are not commanding, nor do we want, trial courts to conduct i-type reviews in PCRs."); *State v. Shattuck*, 140 Ariz. 582, 585, 684 P.2d 154, 157 (1984) (noting that Anders does not require fundamental error review at every level of the appellate process). To the contrary, we hold only that if counsel refuses to proceed, a pleading defendant has a right under Ariz. Const. art. 2, § 24 to file a pro se PCR petition. Trial courts should treat such petitions like any other and may, if appropriate, summarily dismiss them under Ariz.R.Crim.P. 32.6(c).

*Montgomery*, 181 Ariz. at 260, 889 P.2d at 618.

Accordingly, the Arizona procedure does not require any determination by the court on the frivolity of the proceeding, only on the actual claims raised.

Moreover, if the Arizona court might actually independently search the record under *Anders*, to the extent that it would only do so by searching for "fundamental error," the review would not be sufficient. *Anders* and *Smith* call for a search for any non-frivolous claim, not just "fundamental error."

### (b). *Court and Counsel Determination*

*Smith* also made clear that an evaluation of the record is required of both the court and counsel. "*Wende*, by contrast, requires both counsel and the court to find the appeal to be lacking in arguable issues, which is to say, frivolous." *Smith*, 528 U.S. at 279–80. Under the Arizona procedure, the PCR court has no mandate to review the record in search of claims not raised by either counsel or Petitioner. *Montgomery*, 181 Ariz. at 260, 889 P.2d at 618. Accordingly, at best the PCR court makes a determination that the claims actually raised are frivolous, but not that there are no claims which could be raised to support the petition.

It is true that Arizona Rule of Criminal Procedure 32.6(c) appears to mandate a review of the entire record to identify unraised claims. The Rule requires: "On

reviewing the petition, response, reply, files and records, and disregarding defects of form, the court shall identify all claims that are procedurally precluded…"   Even more directly, the comments to the Rule espouse: "Section (c)…instructs the court to make a final adjudication of all the petitioner's claims--those lurking in the background as well as those specified." Ariz. R. Crim. Proc. 32.6, Comment.   However, the mandate of the Arizona Supreme Court in *Montgomery* makes clear that no such review is to be afforded when a notice of no colorable claims is filed.  Moreover, Respondents explicitly argue that no such review should be required.  "And in the Rule 32 context, requiring the court to conduct an independent review of an incomplete trial record containing no reviewable issues would be futile and counterproductive." (Supp. Ans., Doc. 16 at 14.)

In the absence of such a determination by the court, the indigent defendant remains subject to the disparity between retained counsel (who is externally motivated to identify and pursue potential claims) and appointed counsel.

### (c). *Counsel Provided Until Deemed Frivolous*

*Smith* observed that *Anders* and its progeny have required that counsel remain an advocate until the court determined that the appeal was frivolous.  "[T]he [invalidated] *Penson* procedure permitted a basic violation of the *Douglas* right to have counsel until a case is determined to be frivolous and to receive a merits brief for a nonfrivolous appeal." *Smith*, 528 U.S. at 280.

It is true that here counsel continued in an "advisory" capacity.  But *Anders* did not seek to preserve merely the right to an advisor, but to an advocate. "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client." *Anders*, 386 U.S. at 744.

Respondents argue that an independent review by the PCR court is not required, because PCR counsel remained in an advisory capacity.  (Supp. Ans. Doc. 16 at 14.) However, the record provided does not indicate that counsel remained in such a capacity.

The Notice of No Colorable Claim requested that the court "allow Petitioner to proceed *pro se.*" (Exhibit G, Not. No Claim at 1.)  Respondents have not provided the trial court's order, if any, on that notice.  In Petitioner's words, counsel "withdrew." (Exhibit H, PCR Pet. at 8.)  The trial court's dismissal order made no recognition that Petitioner remained represented, and instead forwarded its decision directly to Petitioner and not counsel.  (Exhibit I, Order 5/22/15.)

Even if it is assumed counsel remained in an advisory capacity, such capacity does not avoid *Anders* concerns.

It is true that in *Smith*, California's *Wende* procedure did not require or permit counsel to withdraw, but directed he remain "availab[le] to brief any issues on which the court might desire briefing." *Smith*, 528 U.S. at 265.  It is also true that the *Smith* Court noted this as a basis for upholding the procedure.  But in doing so, the Court simultaneously observed that the state court had been mandated to conduct its own review of the record and order additional briefing in claims were discerned.  "Under *Wende*…violations do not occur, both because counsel does not move to withdraw and because the court orders briefing if it finds arguable issues." *Smith*, 528 U.S. at 280.

Here, however, the Arizona courts are not mandated to conduct such a review.  Thus, the fact that counsel remains in an advisory capacity is of limited benefit.  At best, it insures some level of assistance to the defendant in presenting claims he discerns on his own.  But it does nothing to avoid the risk that claims which have escaped both counsel and the *pro se* petitioner will be reviewed. It leaves the of-right PCR petitioner with "only one tier of review." *Smith*, 528 U.S. at 281.

Moreover, as noted above, *Anders* seeks to protect the right to advocacy, not mere representation.  The Fifth Circuit has observed:

> that counsel did not formally withdraw does not appear to be a significant distinction that would change the analysis from the presumed prejudice of *Penson* to a harmless error standard. Lofton may have been formally represented by counsel, but the failure to raise any grounds for appeal was the equivalent of his attorney's withdrawal.

*Lofton v. Whitley*, 905 F.2d 885, 888 (5th Cir. 1990).

Respondents make no suggestion that in an "advisory capacity" counsel was required to continue to function in the role of an advocate, or that counsel provided any meaningful assistance to Petitioner in identifying or presenting his claims.    In Petitioner's words, counsel "withdrew," and "Petitioner, who is a Mexican-national and speaks no English is now forced to proceed in *pro se*, without the benefit of counsel, and must rely upon the assistance of other inames because the ADC no longer has law libraries."  (Exhibit H, PCR Pet. at 8.)

### (d).  *Substantive Brief by Counsel*

*Smith* also observed that California's procedure in *Wende,* unlike that in *Anders,* required more than "a one-paragraph letter from counsel stating only his 'bare conclusion' that the appeal had no merit."  *Smith*, 528 U.S. at 280–81.    Rather, the *Wende* procedure required that counsel file "a brief…that summarizes the procedural and factual history of the case, with citations of the record… attests that he has reviewed the record, explained his evaluation of the case to his client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief…[and] further requests that the court independently examine the record for arguable issues."  *Id.* at 265. Doing so "both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case."  *Id.* at 281.

In contrast, under Rule 32.4(c), counsel need only "file a notice advising the court" of his determination that "there are no colorable claims which can be raised on the defendant's behalf."   That requirement provides no assurance that counsel has actually reviewed the record, nor does it assist the court in conducting its own evaluation, nor does it request review of the record by the court to identify issues counsel may have missed.

Here, PCR counsel went beyond the strict mandates of Rule 32.4(c) and provided

a summary (albeit an extraordinarily succinct one) of at least the rudimentary factual history of the case, and that she had reviewed at least portions of the record (*i.e.* the court's "master file," transcripts of the plea and sentencing, and client correspondence). (Exhibit G.)  However, there is no indication that PCR counsel reviewed police records, prosecution disclosures, trial counsel's file, presentence reports, Petitioner's confession transcript, or other records which would have provided information central to the most significant issues for review of a guilty plea: *e.g.* the quality of counsel's advice to the defendant about the plea, the investigation supporting that advice, and the propriety of the sentence issued.

Moreover, despite the fact that Petitioner had claims he wished to raise, as evidenced by his *pro per* petition, counsel offered the court no information on those claims.  Instead she simply opined: "There are no viable issues."[7]  (Exhibit G, Notice at 6.)  While explicitly addressing the defendant's proffered claims was not required of counsel under the *Wende* procedure in *Smith*, 528 U.S. at 265, or in *Anders*, 386 U.S. at 744, both cases called for counsel to at least provide the supporting information.  "That request [to withdraw] must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal."  *Anders*, 386 U.S. at 744.  Counsel "summarizes the procedural and factual history of the case, with citations of the record."  *Smith*, 528 U.S. at 265.  The absence of any information in counsel's Notice of No Colorable Claim which would have been relevant to Petitioner's claims of ineffective assistance of counsel or sentencing error highlights the extent to which Petitioner was left without counsel.

Rather than being assured by counsel's report here, a court conducting its own review might have suspected that counsel's review was far too limited to depend upon her assessment that there were no non-frivolous issues for review in deciding to proceed

---

[7] In the preface of the Notice, counsel asserted "no colorable claims."  (Exhibit G, at 1.) Because it does not make a difference, the undersigned presumes that counsel's deviation to referencing "viable" claims was not an intentional deviation from the "frivolous" standard required under *Anders* and *Smith*, but a misstatement.

without benefit of briefing from counsel.

### (e). *Determination by Other than Trial Judge*

Finally, the *Smith* court found California's *Wende* procedure sufficient because it provided for at least two tiers of review, while other disapproved procedures provided "only one tier of review—by the trial judge in *Eskridge* (who understandably had little incentive to find any error warranting an appeal) and by the public defender in *Lane*." *Smith*, 528 U.S. at 281.

Under the *Wende* procedure, not only did the defendant have the services of his appointed counsel, but "[t]he appellate court, upon receiving a '*Wende* brief,' must 'conduct a review of the entire record,' regardless of whether the defendant has filed a pro se brief," and search for any "arguable (i.e., nonfrivolous) issue." *Smith*, 528 U.S. at 265-266.

In contrast, Arizona requires no such second review.  And none was conducted here.  Instead, the trial court concluded only that the "matters contained in the Petition" filed *pro per* by Petitioner were precluded or untimely, and without merit.  (Exhibit I, Order 5/22/15.)  Similarly, no review was undertaken by the Arizona Court of Appeals, which explicitly denied any obligation to do so.  (Exhibit K, Mem. Dec. at ¶ 4.)

### (3).  Conclusion re Violation

Based upon the foregoing, the undersigned concludes that Petitioner's rights under *Anders* were violated by the failure of the trial court to independently review the record for non-frivolous issues for review.

### d.   No Prejudice Need Be Shown

In ordering supplemental briefing on the *Anders* issue, the undersigned directed Respondents to address whether prejudice had to be shown to obtain relief.  Respondents replied: "The Supreme Court has noted that because a violation of *Anders* leaves a

defendant completely without counsel, the error is structural and cannot be reviewed under a prejudice or harmless error analysis. [*Penson*] *v. Ohio*, 488 U.S. 75, 88–89 (1988)." (Supp. Ans. Doc. 16 at 15 n. 2.)    Indeed, the Court in *Smith* reaffirmed the presumption of prejudice standard in *Penson*, but declined to apply it because the defendant in *Smith* had "received appellate counsel who has complied with a valid state procedure for determining whether the defendant's appeal is frivolous, and the State has not at any time left the defendant without counsel on appeal."  *Smith*, 528 U.S. at 286. Thus, Robbins was to be required on remand to show prejudice from counsel's failure to find an issue for appeal.

Here, however, Petitioner has not had the benefit of a state procedure which passes muster under *Anders* or *Smith*, and thus prejudice must be presumed.

**5.  Appropriate Relief**

Petitioner asks as relief on his petition that his plea be revoked and a new trial and resentencing be required.  (Petition, Doc. 1 at "11".)

In response to the Court's Order directing supplemental briefing on the *Anders* issue, Respondents argue that "the appropriate remedy would be to grant the Petition for the superior court to conduct a new Rule 32 PCR proceeding consistent with *Anders*." (Supp. Ans., Doc. 16 at 15, n. 2.)

In reply, Petitioner seeks either an invalidation of his conviction or sentence, or "a conditional grant of the writ so the state can conduct a new Rule 32 proceeding."

Section 2243 of the Judicial Code provides that the habeas court "dispose of the matter as law and justice require."  28 U.S.C. § 2243.  "If the constitutional error tainted some proceeding *other* than the guilt-innocence trial and resulting conviction (for example, the plea hearing, penalty trial, or appeal), the appropriate relief may be an order that the state either release the prisoner or give her a second chance to utilize or invoke the tainted procedure."  Hertz & Liebman, *Federal Habeas Corpus Pract. & Proced.* § 33.4.

Thus, ordinarily, the proper remedy for the constructive denial of counsel on appeal is not a vacating of the judgment, but a remand for compliance with *Anders*.   *See e.g. Evitts v. Lucey*, 469 U.S. 387, 390 (1985) (based on ineffective assistance of appellate counsel, affirming habeas writ ordering release conditioned on reinstatement of appeal); *Penson*, 488 U.S. at 89 (remanding on appeal for proceedings consistent with holding); *United States v. Griffy*, 895 F.2d 561, 563 (9th Cir. 1990) (in direct appeal, requiring *Anders* briefing by appellate counsel).

Under the circumstances of this case, the undersigned finds that "law and justice" call for the issuance of the writ directing the release of Petitioner, unless Petitioner is granted a new of-right Rule 32 PCR proceeding, including the filing of either a merits brief by counsel or a substantive brief consistent with *Anders*, and in the event of the latter, an independent review of the record for non-frivolous error by the trial court.

**E. SUMMARY**

Based upon the foregoing, the undersigned concludes that Petitioner's:   **Ground 1** (ineffectiveness re investigation) was either waived by his guilty plea or is conclusory and without merit; **Ground 2** (ineffectiveness re confession) was waived by his guilty plea; and **Ground 3** (ineffectiveness re mitigation) is without merit.   However, the undersigned concludes that relief must be granted on **Ground 4** (*Anders* review).

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges

detention pursuant to a State court judgment.   The recommendations if accepted will result in portions of Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."   *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment in denying or dismissing Grounds 1 through 3, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling, and jurists of reason would not find the district court's assessment of the constitutional claims addressed on their merits was debatable or wrong.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to Grounds 1 through 3 of the Petition, a certificate of appealability should be denied.

//

//

//

//

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 1, 2 and 3 of the Petitioner's Petition for Writ of Habeas Corpus, filed November 9, 2015 (Doc. 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Ground 4 of the Petitioner's Petition for Writ of Habeas Corpus, filed November 9, 2015 (Doc. 1) be **CONDITIONALLY GRANTED**, and that Petitioner be ordered released unless within 90 days of the Court's Order, Petitioner is permitted to file a new of-right Rule 32 PCR proceeding, including the filing of either a merits brief by counsel or a substantive brief consistent with *Anders v. California*, 386 U.S. 738 (1967), and in the event of the latter, an independent review of the record for non-frivolous error by the trial court consistent with *Anders*.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations with regard to Grounds 1, 2 and 3 are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant

to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: September 23, 2016

15-2264r RR 16 06 07 on HC.docx

_____
James F. Metcalf
United States Magistrate Judge